IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| WILLIAM JONES, on behalf of himself and others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> WAFFLE HOUSE, INC., a Georgia corporation, WH CAPITAL, LLC, a Georgia limited liability company, THE SOURCE FOR PUBLIC DATA, L.P. dba PUBLICDATA.COM, a foreign limited partnership, SHADOWSOFT, INC., a foreign corporation, HARLINGTON-STRAKER-STUDIO, INC., a Texas corporation, and DALE BRUCE STRINGFELLOW, an individual, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  Case No.: 6:15-cv-1637-Orl-37-DAB |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff William Jones (hereinafter, "Plaintiff"), on behalf of himself and all others similarly situated, complains of defendants Waffle House, Inc., a Georgia corporation, and WH Capital, LLC, a Georgia limited liability corporation (together, "Waffle House"), The Source for Public Data, L.P. dba PublicData.com, a foreign limited partnership, ShadowSoft, Inc., a foreign corporation, Harlington-Straker Studio, Inc., a Texas corporation, and Dale Bruce Stringfellow, an individual (collectively, "PublicData") as follows:

## NATURE OF ACTION

1. This class action arises from Waffle House's acquisition and use of consumer and/or investigative consumer reports (referred to collectively as "background reports") from

PublicData, a consumer and investigative consumer reporting agency ("CRA"), to conduct background checks on Plaintiff and current and former employees.

2. Waffle House routinely obtains and uses information from background reports in connection with its hiring processes without complying with state and federal mandates for doing so.

3. Plaintiff, individually and on behalf of all other members of the public similarly situated, seeks compensatory and punitive damages due to Waffle House's systematic and willful violation of the Fair Credit Reporting Act ("FCRA").

4. Waffle House has violated the requirements under the FCRA in numerous ways—most conspicuously by failing to provide proper disclosures to applicants and/or employees prior to taking adverse action against them. Moreover, Waffle House has an obligation to conduct an individualized assessment of an applicant's suitability for employment, but it does not appear that Waffle House performed this assessment for Plaintiff. *See Green v. Missouri Pacific Railroad*, 549 F.2d 1158, 1160 (8th Cir. 1977).

5. The FCRA requires users of consumer reports to follow certain procedures and provide certain disclosures prior to and after taking adverse actions against current and former employees based in whole or in part on their consumer report information. Among other things, prior to taking an adverse action, an employer must provide a "pre-adverse action" notice, which includes a copy of the consumer report and a current version of the FCRA Summary of Rights promulgated by the Federal Trade Commission ("FTC") and Bureau of Financial Protection. After taking the adverse action the employer must then provide a separate "post-adverse action" notice, which includes the contact information of the consumer reporting agency that supplied the report; a statement that the agency supplying the report did not make the decision to take the

unfavorable action and cannot give specific reasons for the action; and a notice of the applicant or employee's right to dispute the accuracy of the information furnished by the consumer reporting agency; and that a free additional report is available from the agency if the person asks for it within 60 days, among other requirements.

6. Waffle House failed to provide a copy of the consumer report and/or a current version of the FCRA Summary of Rights prior to taking an adverse action against Plaintiff, namely, refusal to hire Plaintiff, and also failed to provide a separate notice of the adverse action with the requisite information prescribed under the FCRA after taking the adverse action. For these reasons, among others, Waffle House's failure to provide any pre- and/or post-adverse action notice violates the law.

7. As further alleged herein, Waffle House has willfully failed to properly apprise itself of and follow the statutory mandates before seeking, acquiring, and utilizing background reports to make employment decisions; violated the express and unambiguous provisions of the relevant statutes; and/or failed to implement reasonable procedures to assure compliance with statutory mandates.

8. As a result of Waffle House's wrongful acts and omissions, Plaintiff and other putative class members have been injured, including, without limitation, having their privacy and statutory rights invaded in violation of the FCRA.

9. Shockingly, Waffle House uses a shady, off-shore consumer reporting agency called PublicData to perform background checks on applicants and employees. Not only does PublicData itself violate the FCRA in numerous ways, it also wholly disclaims any obligation to comply with that statute, providing slipshod consumer reports for literally "pennies" on the

dollar.[1]  Waffle House's choice of this illegal consumer reporting agency to screen employees and job applicants is obviously an attempt to tamp down the cost of doing business, at the expense of the rights of Plaintiff and putative class members.

10. Plaintiff seeks on behalf of himself and putative class members statutory and/or actual damages, punitive damages, the costs of suit, and reasonable attorney's fees, as well as additional and further relief that may be appropriate.  Plaintiff reserves the right to amend this Complaint to add additional relief as permitted under applicable law.

## PARTIES

11. At all times mentioned herein, Waffle House, Inc. was and is a Georgia corporation with its principal place of business in Norcross, Georgia and was, at all times relevant to this Complaint, engaged in commercial transactions throughout this county, the State of Florida, and the various states of the United States of America.

12. At all times mentioned herein, WH Capital, LLC was and is a Georgia limited liability corporation with its principal place of business in Atlanta, Georgia and was, at all times relevant to this Complaint, the parent company of Waffle House, Inc. Based upon information and belief, all individual members of WH Capital, LLC are citizens of states other than Florida. Based on publicly available information, the citizenship of each individual member of WH Capital, LLC cannot be confirmed at this time. The citizenship of each individual member of WH Capital, LLC will be determined throughout the course of discovery.

13. At all times mentioned herein, The Source for Public Data, L.P. dba Publicdata.com was and is a foreign corporation with a registered agent for service in Texas, and was, at all times relevant to this Complaint, engaged in the preparation and sale of consumer

---

[1] *See* http://www.publicdata.com/faq.html (last accessed Aug. 20, 2015).

reports throughout this county, the State of Florida, and the various states of the United States of America.

14. At all times mentioned herein, ShadowSoft, Inc. was and is a foreign corporation with a registered agent for service in Texas, and was, at all times relevant to this Complaint, engaged in the preparation and sale of consumer reports throughout this county, the State of Florida, and the various states of the United States of America.

15. At all times mentioned herein, Harlington-Straker Studio, Inc. was and is a Texas corporation with a registered agent for service in Irving, Texas, and was, at all times relevant to this Complaint, the principal owner of Publicdata.com and Shadowsoft, companies engaged in the preparation and sale of consumer reports throughout this county, the State of Florida, and the various states of the United States of America.

16. At all times mentioned herein, Dale Bruce Stringfellow was and is a Texas resident and, at all times relevant to this Complaint, the owner, founder, and operator of Publicdata.com and Shadowsoft, companies engaged in the preparation and sale of consumer reports throughout this county, the State of Florida, and the various states of the United States of America.

17. At all times mentioned herein Plaintiff was and is a resident of the State of Florida.

### JURISDICTION AND VENUE

18. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

19. This Court also has jurisdiction pursuant to 28 U.S.C. § 1441(a) based on 18 U.S.C. § 1332(d). This is a putative class action whereby: (i) the proposed nationwide class consists of more than 100 members; (ii) at least some class members have a different citizenship

from Defendant; and (iii) the claims of the proposed class exceed $5,000,000.00 in the aggregate.

20. Venue is proper pursuant to 28 U.S.C. §§ 89(b) and 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this judicial district.

## FACTUAL BACKGROUND

### *Facts Regarding Waffle House*

21. Plaintiff applied for employment with Waffle House in December 2014. As part of the hiring process, Waffle House conducted a background check. In conducting the background check, Waffle House procured or caused to be prepared a background report (i.e., a consumer report and/or investigative consumer report, as defined by 15 U.S.C. § 1681a(d)(1)(B) and 15 U.S.C. § 1681a(e).

22. Despite Waffle House's intent to take an adverse action, Waffle House did not provide Plaintiff with a copy of the report before taking adverse action or the FCRA Summary of Rights promulgated by the FTC and Bureau of Financial Protection, as required by section 1681b(b)(3)(A) of the FCRA.

23. Instead, Waffle House simply denied his application for employment. In so doing, Waffle House failed to comply with the notice requirements set forth in 15 U.S.C. § 1681m(a), including the name, address, and telephone number of the consumer reporting agency; Plaintiff's right to obtain a free copy of his consumer report; and his right to dispute the accuracy or completeness of any information in the consumer report. Plaintiff has reason to be believe that his consumer report contains inaccuracies that could have been remedied had Waffle House provided him with statutorily required notices.

24. Additionally, following Waffle House's adverse action, and after a reasonable

period of time, Waffle House did not provide a separate post-adverse action notice which includes the contact information of the consumer reporting agency that supplied the report; a statement that the agency supplying the report did not make the decision to take the unfavorable action and cannot give specific reasons for the action; and a notice of the applicant or employee's right to dispute the accuracy of the information furnished by the consumer reporting agency and that a free additional report is available from the agency if the person asks for it within 60 days, among other requirements under section 1681m(a) of the FCRA.

25. Plaintiff is informed and believes and thereon alleges that Waffle House's violation of the FCRA as alleged hereinabove was systematic and uniform and affected all job applicants and employees in the same way.

26. Waffle House's "pre-adverse action" and/or "post-adverse action" misconduct, as further alleged herein, was willful. Although Waffle House was aware of the disclosure requirements through, *inter alia*, the express language of the statute and numerous guidance documents issued by the FTC, Defendant systematically failed to comply with the requirements. In this way, Waffle House has violated federal and state statutes as described herein.

### *Facts Regarding PublicData*

27. PublicData operates a website that allows users to search for consumers based on a number of categories, including name, email address, and phone number. Such reports may contain numerous items of information, including but not limited to age, employer, current and previous addresses, phone numbers, email addresses, arrest and conviction records, the identity of relatives, property records, marriage and divorce records, and lawsuit records.

28. PublicData offers an online service allowing consumers to request background checks about virtually any person in the United States. In response to a request, PublicData

obtains information from various sources and assembles it into detailed reports that it provides to users. These reports contain private, sensitive, and often erroneous information, including but not limited to residential history, birth dates, criminal records, tax records, driver's license numbers, DMV records, professional license records, civil suits, and voter registration information.

29. PublicData maintains no policies or procedures whatsoever to ensure that it accurately assembles and provides consumer reports in compliance with the FCRA.

30. Instead, PublicData claims that it is not a consumer reporting agency, does not sell consumer reports, and is not subject to the FCRA.

31. PublicData contends that it merely re-sells public, government-compiled records, and that the government is responsible for any errors and inaccuracies in the records, and that any requests for correction must be made through the government agency supplying the record. PublicData portrays itself as some sort of government watchdog providing the public with government data under the Freedom of Information Act.

32. In reality, what PublicData provides is sensitive personal, financial, and legal information regarding individuals. The information is the same information contained in consumer reports sold by recognized consumer reporting agencies and the information in PublicData's reports is compiled from the same sources as the major three consumer reporting agencies' reports.

33. Moreover, customers of PublicData use the reports it generates for the same purposes as users of other consumer reports—to make decisions regarding employment and extension of credit, among other things.

34. Nonetheless, PublicData maintains absolutely no policies and procedures to

ensure that reports comply with the standards set forth in the FCRA—that they are complete, accurate, and up to date; that purchasers of the reports may use them only for an FCRA-approved purpose and certify that they are doing so; and that procedures exist for consumers to dispute information in their reports, for the agency to investigate disputes and make corrections, and for consumers to obtain timely copies of their reports and notice of their rights to dispute and correct errors.

35. Indeed, PublicData claims that it is free to ignore the FCRA entirely, because it claims that FCRA does not apply. This is because PublicData has structured itself as an off-shore entity, and operates in the U.S. through a network of sham companies designed to put its assets out of reach and, it believes, itself out of reach of legal liability. PublicData is incorporated in the West Indies, and its general partner is a shell corporation incorporated in Texas, Harlington-Straker, which in turn is wholly owned by Stringfellow.

36. Publicdata.com sells over 50 million consumer reports a year, yet has no physical building, employees, or assets. Publicdata.com is owned and controlled by Stringfellow, who, through his shell corporation Shadowsoft, purchases and assembles all of the public records and uploads them onto PublicData's Internet servers without regard for the user of the accuracy of the consumer report. Both PublicData and Harlington-Strake are sham entities, whose operations are conducted by Stringfellow and Shadowsoft, neither of which has a direct interest in PublicData. Stringfellow, Shadowsoft, and Harlington-Straker are alter egos of PublicData and, following discovery, evidence will be adduced sufficient to pierce the corporate veil and hold each entity liable for the misconduct of PublicData.

37. Despite PublicData's practice of compiling, creating, and selling consumer reports, PublicData openly admits that it has absolutely no policies or procedures whatsoever to

ensure that it accurately assembles and provides consumer reports in compliance with the FCRA. Instead, PublicData asserts that it is not a consumer reporting agency regulated by the FCRA and is thus not subject to the FCRA. Consistent with this policy, PublicData refuses to reinvestigate or correct erroneous information in consumer's reports pursuant to 16 USC § 1681i, refuses to provide prompt notices of dispute to furnishers of information pursuant to that section, refuses to provide notices to consumers of the results of a reinvestigation, and refuses to include statements of dispute when providing consumer reports containing the information in question, among other obligations.

38. Indeed, PublicData staunchly maintains that it "is not responsible for any inaccuracies in any database. PublicData will NOT modify records in any database upon notification of inaccuracies from individuals." [2]

39. 15 U.S.C. § 1681k(a)(1) requires that when consumer reporting agencies such as PublicData sell a consumer report to prospective employers such as Waffle House here, the consumer reporting agency must notify the consumer that it is furnishing a consumer report about them for employment purposes at the time it provides the prospective employer with the report. This is intended to provide consumers with immediate notice of the furnishing of the consumer report and information necessary to preemptively contact the consumer reporting agency to correct information contained in the consumer report. This requirement also alerts the consumer to the employer's use of the consumer report and allows the consumer the opportunity to address any concerns in the report with the prospective employer.

40. Alternatively, a consumer reporting agency may choose to comply with 15 U.S.C. § 1681k(a)(2) and "maintain strict procedures designed to insure" that public record information

---

[2] *See* http://www.publicdata.com/faq.html (last accessed Aug. 22, 2015).

that affects employment, such as arrests and convictions, "is complete and up to date." But PublicData maintains no procedures whatsoever to insure that public records data is "complete and accurate," let alone "strict procedures" to do so. Indeed, PublicData expressly disclaims any responsibility for the accuracy or completeness of the records it sells, purporting to foist the duty solely on the government agencies creating the records and advising consumers and report users to contact the government agencies regarding inaccuracies.

41. 15 U.S.C. § 1681e(b) requires consumer reporting agencies to use reasonable procedures to ensure maximum possible accuracy in publishing Plaintiff's consumer report. Plaintiff sought employment with Waffle House that was conditioned upon a background check, and Waffle House purchased the consumer report for the background check from PublicData. Plaintiff believes that the consumer report that PublicData sold to Waffle House may contain inaccuracies that Plaintiff could have corrected had he been properly and timely apprised of his rights under the FCRA by PublicData and Waffle House, as they were required to do.

42. 15 U.S.C. § 1681b(b)(1)(A) requires PublicData to obtain certification from a user of consumer reports such as Waffle House before providing a consumer report for employment purposes that (i) the user provided the consumer a clear and conspicuous disclosure that the report would be used for employment purposes; (ii) that before taking adverse action, the user will provide the consumer a copy of the report and description of his rights under the FCRA; and (iii) the information will not be used in violation of any federal or state laws. Consumer reporting agencies such as PublicData may only furnish a consumer report for employment purposes if the consumer reporting agency provides the consumer with a summary of his or her rights under the FCRA.

43. 15 U.S.C. § 1681e(a) requires consumer reporting agencies like PublicData to

maintain procedures by which users of the report identify themselves, certify the purpose for which the information is sought, and certify that the information will be used for no other purpose. It requires PublicData to make a reasonable effort to verify the identity of the user of the consumer report and the user's use of the report before furnishing the consumer report.

44. 15 U.S.C. § 1681e(d) requires that consumer reporting agencies such as PublicData provide notice to users of consumer reports such as Waffle House here of the user's responsibilities in using the report, under the FCRA.

**Facts Regarding Plaintiff**

45. In December 2014 Plaintiff applied for employment at Waffle House. As part of its hiring process, Waffle House conducted a background check regarding Plaintiff, which included obtaining a consumer report on Plaintiff. Waffle House obtained a consumer report regarding Plaintiff from PublicData in December 2014. Upon information and belief, the report contained information about Plaintiff regarding, among other things, purported criminal convictions.

46. Waffle House maintains a policy of refusing to hire applicants who have criminal convictions, without permitting the potential employee to explain the conviction and present grounds why they otherwise would make a good employee. A blanket policy of refusing to hire individuals with criminal convictions violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and obtaining a consumer report to further such policy constitutes an impermissible purpose for use of a consumer report under the FCRA.

47. Upon information and belief, based on the contents of the consumer report that PublicData supplied, Waffle House refused to hire Plaintiff.

48. Plaintiff was not provided a copy of the consumer report at the time he was

notified that he would not be hired, nor was he notified that Waffle House had decided not to hire him based on the consumer report. Plaintiff received no notice advising him of his rights to dispute the contents of the consumer report, nor how to contact the consumer reporting agency that supplied the report to obtain a copy of the report and seek correction of errors.

## CLASS ACTION ALLEGATIONS

49. Plaintiff brings this action as a class action against Waffle House pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons residing in the United States who applied for employment with or were employed by Defendant within the five years immediately preceding the filing of this lawsuit against whom Defendant took adverse employment actions based, in whole or in part, on information contained in a consumer report or investigative consumer report ("the Waffle House class").

50. Plaintiff brings this action as a class action against PublicData pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons in the United States who (a) have had information relating to their credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living compiled and displayed by PublicData and (b) were the subject of a report sold by PublicData to a third party, and which was furnished for an employment purpose, within five years of the filing of this action and continuing to the present ("the PublicData class").

51. Members of the classes, as described above, will be referred to as "class members." Excluded from the classes and subclasses are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff. Plaintiff reserves the right to amend the above classes and subclasses and to add additional subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

52. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 because there is a well-defined community of interest in the litigation and the classes and subclasses are easily ascertainable.

### A.    Numerosity

53. Although the precise number of class members has not been determined at this time, Plaintiff estimates that the classes and subclasses consists of thousands of members and that the identity of such persons is readily ascertainable by inspection of Defendant's employment and/or hiring records.  Therefore it is reasonable that the class members are so numerous that joinder is impracticable, and the disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

### B.    Common Questions Predominate

54. There are questions of law and fact common to the Waffle House class that predominate over any questions affecting only individual putative class members.  Thus proof of a common set of facts will establish the right of each class member to recovery.  These common questions of law and fact include but are not limited to:

a.    Whether Waffle House violated section 1681b(f) of the FCRA by failing to certify that the consumer report being obtained on a prospective employee would be used only for lawful purposes and not those in violation of Title VII;

b.    Whether Waffle House violated the FCRA by failing to provide class members with the FCRA Summary of Rights promulgated by the FTC and Bureau of Financial Protection;

c.    Whether Waffle House violated section 1681b(b)(3)(A) of the FCRA by failing to provide applicants and employees with copies of their consumer reports or

investigative consumer reports before taking adverse action, as required by section 1681b(b)(3)(A) of the FCRA; and

d.      Whether Waffle House violated the FCRA by failing to provide post-adverse action notices informing applicants and employees that adverse action was taken either wholly or partly because of information contained in a consumer report or investigative consumer report.

55. There are questions of law and fact common to the PublicData class that predominate over any questions affecting only individual putative class members.  Thus proof of a common set of facts will establish the right of each class member to recovery.  These common questions of law and fact include but are not limited to:

a.      Whether PublicData violated section 1681k(a) of the FCRA by failing to either provide class members with notice of the furnishing of a consumer report to their potential employer, or maintain "strict procedures" to insure the completeness and accuracy of the public records it sold;

b.      Whether PublicData violated section 1681e(b) of the FCRA by failing to use reasonable procedures to ensure maximum possible accuracy in publishing consumer reports;

c.      Whether PublicData violated section 1681b(b)(1)(A) of the FCRA by failing to obtain certification from a user of consumer reports before providing a consumer report for employment that (i) the user provided the consumer a clear and conspicuous disclosure that the report would be used for employment purposes; (ii) that before taking adverse action, the user will provide the

consumer a copy of the report and description of his rights under the FCRA; and (iii) the information will not be used in violation of any federal or state laws;

d. Whether PublicData violated section 1681e(a) of the FCRA by failing to maintain procedures by which users of the report identify themselves, certify the purpose for which the information is sought, and certify that the information will be used for no other purpose; and

e. Whether PublicData violated section 1681e(d) of the FCRA by failing to provide notice to users of consumer reports of the user's responsibilities under the FCRA in using the report.

## C. Typicality

56. Plaintiff's claims are typical of the claims of the putative class members because Waffle House failed to provide Plaintiff with the requisite disclosures and engaged in adverse action against him without complying with the disclosure requirements under the FCRA, and without providing valid certification that any consumer report would not be used for a prohibited purpose under the FCRA. Plaintiff's claims against PublicData are typical of those of the class because PublicData issued a consumer report regarding Plaintiff to a prospective employer (i.e., Waffle House) without obtaining a valid certification as to permissible purpose from Waffle House, failed to maintain strict procedures to insure the accuracy of the records regarding Plaintiff that it sold, failed to provide Plaintiff notice of the furnishing of his consumer report to Waffle House and notice of his rights, and failed to maintain procedures by which Plaintiff could contact PublicData to challenge errors in his consumer report. Plaintiff and each class member sustained similar injuries arising out of Waffle House's and PublicData's conduct in violation of law. The injuries of each class member were caused directly by Waffle House's and

PublicData's wrongful conduct. In addition, the factual underpinning of Waffle House's and PublicData's misconduct is common to all putative class members and represents a common thread of misconduct resulting in injury to all class members. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the class members and are based on the same legal theories.

**D.    Adequacy**

57. Plaintiff will fairly and adequately represent and protect the interests of the classes and subclasses. Counsel who represent Plaintiff and putative class members are experienced and competent in litigating class actions.

**E.    Superiority of Class Action**

58. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of putative class members is not practicable, and questions of law and fact common to putative class members predominate over any questions affecting only individual putative class members. Each putative class member has been damaged and is entitled to recovery as a result of the violations alleged herein. Moreover, because the damages suffered by individual members of the classes and subclasses may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the classes and subclasses to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

59. The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met because questions of law and fact common to each class member predominate

over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

60. Plaintiff is unaware of any difficulties in managing this case that should preclude class action.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE FAIR CREDIT REPORTING ACT,

### 15 U.S.C. § 1681b(f)

#### (Against Waffle House)

61. Plaintiff hereby re-alleges the allegations contained in paragraphs one (1) through sixty (60) of this Complaint and incorporates the same by reference as though set forth at length herein.

62. Waffle House is a "person" as defined by Section 1681a(b) of the FCRA.

63. Plaintiff and class members are "consumers" within the meaning Section 1681a(c) of the FCRA because they are "individuals."

64. Section 1681b(b)(f) of the FCRA provides, in relevant part:

(f) Certain use or obtaining of information prohibited. A person shall not use or obtain a consumer report for any purpose unless
…
(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
(2) the purpose is certified in accordance with section 607 [§ 1681e] by a prospective user of the report through a general or specific certification.

65. Furthermore, section 1681b(b)(1)(A)(ii) provides that the user must certify to the consumer reporting agency that "the information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation."

66. As alleged above, Waffle House violates Section 1681b(f) of the FCRA by obtaining consumer reports on Plaintiff and the class without providing proper certification to the

consumer reporting agency regarding the use of the consumer reports.

67. Based upon the facts likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, Waffle House has a policy and practice of failing to certify to consumer reporting agencies that it has a proper purpose, within the meaning of the FCRA, for the use of the consumer report it is obtaining, in violation of Section 1681b(f) of the FCRA.

68. Waffle House's conduct in violation of Section 1681b(f) of the FCRA was and is willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of applicants and employees, including Plaintiff and class members. Waffle House's willful conduct is reflected by, among other things, the fact that Waffle House is a large company with access to legal advice through its own general counsel's office and outside employment counsel, and the plain language of the statute requires Waffle House to certify to CRAs the purpose for which it obtains consumer reports on prospective employees.

69. On information and belief and based upon the facts likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, Waffle House has a policy and practice of procuring investigative consumer reports or causing investigative consumer reports to be procured for applicants and employees without providing certification to consumer reporting agencies of the purpose to which the consumer reports will be put by Waffle House, as required by the FCRA.

70. Accordingly, Waffle House willfully violated and continues to violate the FCRA including, but not limited to, Section 1681b(f). Waffle House's willful conduct is reflected by, among other things, the facts set forth above.

71. As a result of Waffle House's illegal procurement of background reports by way

of its failure to make proper certifications as to proper purpose, as set forth above, Plaintiff and class members have been injured, including, but not limited to, having their privacy and statutory rights invaded in violation of the FCRA.

72. Plaintiff, on behalf of himself and all class members, seeks all available remedies pursuant to 15 U.S.C. § 1681n, including statutory damages and/or actual damages, punitive damages, and attorneys' fees and costs.

73. In the alternative to Plaintiff's allegation that these violations were willful, Plaintiff alleges that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C. § 1681o.

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE FAIR CREDIT REPORTING ACT,**

**15 U.S.C. § 1681b(b)(3)(A)**

**(Against Waffle House)**

74. Plaintiff hereby re-alleges the allegations contained in paragraphs one (1) through sixty (60) of this Complaint and incorporates the same by reference as though set forth at length herein.

75. Section 1681a(k)(1)(B)(ii) of the FCRA defines "adverse action" as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee."

76. Section 1681b(b)(3)(A) of the FCRA requires that anyone attempting to take any adverse action based in whole or in part on a consumer report must first "provide to the consumer to whom the report relates a copy of the report; and a description in writing of the rights of the consumer under this subchapter, as prescribed by the [Bureau of Financial Protection] under section 1681g(c)(3) of this title," i.e., the FCRA Summary of Rights

20

promulgated by the FTC and Bureau of Financial Protection.

77. Based upon the facts likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, Waffle House has a policy and practice of taking adverse actions against applicants and employees based in whole or in part on a consumer report, without first providing them with a copy of the consumer report or a current version of the FCRA Summary of Rights promulgated by the FTC and Bureau of Financial Protection.

78. At all relevant times herein, Waffle House, pursuant to the policy and practice described above, took adverse action against Plaintiff and class members based in whole or in part on a consumer report, without first providing (1) a copy of the consumer report(s) used and/or (2) a written description of the rights of the consumer, i.e., the FCRA Summary of Rights promulgated by the FTC and Bureau of Financial Protection.

79. Waffle House's conduct in violation of Section 1681b(b)(3)(A) of the FCRA was and is willful. Waffle House acted in deliberate or reckless disregard of its obligations and the rights of applicants and employees, including Plaintiff and class members. Waffle House's willful conduct is reflected by, among other things, the fact that Waffle House is a large company with access to legal advice through its own general counsel's office and outside employment counsel; Waffle House was aware of the pre-adverse action requirement to provide a copy of the report and a written description of the rights of the consumer prior to taking an adverse action; and the plain language of the statute unambiguously indicates that failure to provide the consumer with a copy of the report and a written description of the rights of the consumer violates pre-adverse action requirements.

80. Accordingly, Waffle House willfully violated and continues to violate the FCRA including, but not limited to, section 1681b(b)(3)(A). Waffle House's willful conduct is

reflected by, among other things, the facts set forth above.

81. As a result of Waffle House's inadequate disclosures prior to taking adverse action against Plaintiff and class members, Plaintiff and class members have been injured including, but not limited to, having their privacy and statutory rights invaded in violation of the FCRA. Plaintiff and class members have been injured in that Waffle House's conduct caused a material diminishment in their employment prospects without being fully informed of their statutory rights or having an opportunity to invoke those rights and reverse any adverse employment action taken by Waffle House. For example, upon information and belief Waffle House refused to hire Plaintiff as a result of information contained in his consumer report without giving him an opportunity to identify and explain or seek correction of errors in his report. Because of Waffle House's inadequate disclosures, he was deprived of the opportunity to take advantage of his statutory rights.

82. Plaintiff, on behalf of himself and all class members, seeks all available remedies pursuant to 15 U.S.C. § 1681n, including statutory damages and/or actual damages, punitive damages, and attorneys' fees and costs.

83. In the alternative to Plaintiff's allegation that these violations were willful, Plaintiff alleges that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C. § 1681o.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE FAIR CREDIT REPORTING ACT,

### 15 U.S.C. § 1681m(a)

### (Against Waffle House)

84. Plaintiff hereby re-alleges the allegations contained in paragraphs one (1) through sixty (60) of this Complaint and incorporates the same by reference as though set forth at length

herein.

85. Section 1681m(a) provides, in relevant part:

(a) Duties of users taking adverse actions on basis of information contained in consumer reports

*If any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall*—

(1) *provide oral, written, or electronic notice of the adverse action to the consumer*;

(2) provide to the consumer written or electronic disclosure—

(A) of a numerical credit score as defined in section 1681g(f)(2) of this title used by such person in taking any adverse action based in whole or in part on any information in a consumer report; and

(B) of the information set forth in subparagraphs (B) through (E) of section 1681g(f)(1) of this title;

(3) *provide to the consumer orally, in writing, or electronically*—

(A) *the name, address, and telephone number of the consumer reporting agency* (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis) that furnished the report to the person; and

(B) *a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken*; and

(4) *provide to the consumer an oral, written, or electronic notice of the consumer's right*—

(A) *to obtain, under section 1681j of this title, a free copy of a consumer report* on the consumer from the consumer reporting agency referred to in paragraph (3), which notice shall include an indication of the 60-day period under that section for obtaining such a copy; and

(B) *to dispute, under section 1681i of this title, with a consumer reporting agency the accuracy or completeness of any information in a consumer report* furnished by the agency. (Emphasis added.)

86. Based upon the facts likely to have evidentiary support after a reasonable

opportunity for further investigation and discovery, Waffle House has a policy and practice of

23

taking adverse actions against applicants and employees based in whole or in part on consumer reports without providing the following information: notice of the adverse action; the contact information of the consumer reporting company that furnished the report; a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken; notice of the consumer's right to obtain a free copy of the consumer report from the consumer reporting agency within 60 days; and the right to dispute inaccurate or incomplete information in the consumer report with the consumer reporting agency.

87. At all relevant times herein, Waffle House, pursuant to the policy and practice described above, took adverse action against Plaintiff and class members based in whole or in part on a consumer report without providing the following information: notice of the adverse action; the contact information of the consumer reporting company that furnished the report; a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken; notice of the consumer's right to obtain a free copy of the consumer report from the consumer reporting agency within 60 days; and the right to dispute inaccurate or incomplete information in the consumer report with the consumer reporting agency.

88. Waffle House's conduct in violation of section 1681m(a) of the FCRA was and is willful. Waffle House acted in deliberate or reckless disregard of its obligations and the rights of applicants and employees, including Plaintiff and class members. Waffle House's willful conduct is reflected by, among other things, the fact that Waffle House is a large company with access to legal advice through its own general counsel's office and outside employment counsel; Waffle House was aware of the legal requirements upon taking an adverse action; and the plain

language of the statute unambiguously indicates that failure to provide the consumer with a copy of the report and a written description of the rights of the consumer violates pre-adverse action requirements.

89. Accordingly, Waffle House willfully violated and continues to violate the FCRA including, but not limited to § 1681m(a). Waffle House's willful conduct is reflected by, among other things, the facts set forth above.

90. As a result of Waffle House's inadequate disclosures subsequent to taking adverse action against Plaintiff and class members, Plaintiff and class members have been injured including, but not limited to, having their privacy and statutory rights invaded in violation of the FCRA. Plaintiff and class members have been injured in that Waffle House's conduct caused a material diminishment in their employment prospects, without being fully informed of their statutory rights or having an opportunity to invoke those rights and reverse any adverse employment action taken by Waffle House. For example, on information and belief, Waffle House refused to hire Plaintiff based on information contained in his consumer report. Because of Waffle House's inadequate disclosures, he was deprived of the opportunity to take advantage of his statutory rights.

91. Plaintiff, on behalf of himself and all class members, seeks all available remedies pursuant to 15 U.S.C. § 1681n, including statutory damages and/or actual damages, punitive damages, and attorneys' fees and costs.

92. In the alternative to Plaintiff's allegation that these violations were willful, Plaintiff alleges that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C. § 1681o.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE FAIR CREDIT REPORTING ACT,**

**15 U.S.C. §§ 1681b(a) and 1681e(a)**

**(Against PublicData)**

Plaintiff hereby re-alleges the allegations contained in paragraphs one (1) through sixty (60) of this Complaint and incorporates the same by reference as though set forth at length herein.

93. The Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* was enacted in 1970 to ensure, among other things, that "consumer reporting agencies" adhere to strict guidelines for maintaining and distributing fair and accurate consumer reports.

94. The FCRA creates a set of individual consumer rights and a private right of action by which to vindicate those rights.

95. PublicData is a "consumer reporting agency" ("CRA") as defined by the FCRA because it assembles or evaluates consumer reports and investigative consumer reports for the purpose of providing them to third parties and uses means or facilities of interstate commerce for the purpose of preparing and furnishing those reports. *See* 15 U.S.C. § 1681a(f).

96. The data PublicData compiles, distributes, and/or sells to third-parties constitutes "consumer reports" as defined by the FCRA because its reports contain "written, oral, or other communication[s] of . . . information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d).

97. Section 1681b(a) prohibits a CRA from furnishing consumer reports to persons

whom the CRA does not have reason to believe have a "permissible purpose," which include use in credit transactions, insurance underwriting, employment purposes, investment purposes, and other uses specified in the FCRA.

///

98. The FCRA requires that every CRA maintain reasonable procedures to limit the furnishing of consumer reports to those with permissible purposes. These procedures require that the CRA, prior to furnishing a user with a consumer report, require the prospective users of the information to identify themselves to the CRA, certify the purpose for which the information is sought, and certify that the information will be used for no other purpose. The CRA must make a reasonable effort to verify the identity of each new prospective user and the uses certified prior to furnishing such user a consumer report. In addition, section 1681e(a) prohibits a CRA from furnishing a consumer report to any person it has reasonable grounds to believe will not use the consumer report for a permissible purpose.

99. PublicData failed to maintain reasonable procedures to limit the furnishing of consumer reports for permissible purposes. For example, PublicData failed to require that prospective users of its reports identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Moreover, PublicData has furnished consumer reports to persons whom it has reasonable grounds to believe would not use the consumer report for a permissible purpose.

100. By failing to limit the furnishing of reports to those who had a permissible purpose to use such a report, PublicData has violated 15 U.S.C. §§ 1681b(a) and 1681e(a).

101. PublicData's conduct in violation of sections 1681b(a) and 1681e(a) of the FCRA was and is willful. PublicData acted in deliberate or reckless disregard of its obligations

and the rights of applicants and employees, including Plaintiff and class members. PublicData's willful conduct is reflected by, among other things, the plain language of the statute, FTC guidance documents, the fact that PublicData expressly acknowledges the FCRA but disclaims responsibility to comply with its requirements, and the fact that PublicData was previously sued for FCRA violations prior to the occurrence of the facts alleged in this Complaint.

102. As a result of PublicData's conduct described herein and its willful violations of sections 1681b(a) and 1681e(a), Plaintiff and the class have suffered harm as described herein.

103. Plaintiff, on behalf of himself and all class members, seeks all available remedies pursuant to 15 U.S.C. § 1681n, including statutory damages and/or actual damages, punitive damages, and attorneys' fees and costs.

104. In the alternative to Plaintiff's allegation that these violations were willful, Plaintiff alleges that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C. § 1681o.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF THE FAIR CREDIT REPORTING ACT,**

**15 U.S.C. § 1681e(b)**

**(Against PublicData)**

105. Plaintiff hereby re-alleges the allegations contained in paragraphs one (1) through sixty (60) of this Complaint and incorporates the same by reference as though set forth at length herein.

106. Section 1681e(b) mandates that when a CRA prepares a consumer report that it shall follow reasonable procedures to assure the maximum possible accuracy of the information concerning the individual about whom the report relates.

107. As alleged herein, PublicData has failed to follow reasonable procedures to

assure the maximum possible accuracy of the information that it provides in its consumer reports.

108. By and through the acts and practices described herein, PublicData has violated 15 U.S.C. § 1681e(b).

///

109. PublicData's conduct in violation of section 1681e(b) of the FCRA was and is willful. PublicData acted in deliberate or reckless disregard of its obligations and the rights of applicants and employees, including Plaintiff and class members. PublicData's willful conduct is reflected by, among other things, the plain language of the statute, FTC guidance documents, the fact that PublicData expressly acknowledges the FCRA but disclaims responsibility to comply with its requirements, and the fact that PublicData was previously sued for FCRA violations prior to the occurrence of the facts alleged in this Complaint.

110. As a result of PublicData's conduct described herein and its willful violations of Sections 1681e(b), Plaintiff and the class have suffered harm as described herein.

111. Plaintiff, on behalf of himself and all class members, seeks all available remedies pursuant to 15 U.S.C. § 1681n, including statutory damages and/or actual damages, punitive damages, and attorneys' fees and costs.

112. In the alternative to Plaintiff's allegation that these violations were willful, Plaintiff alleges that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C. § 1681o.

## SIXTH CAUSE OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT,
### 15 U.S.C. § 1681e(d)
### (Against PublicData)

113. Plaintiff hereby re-alleges the allegations contained in paragraphs one (1) through sixty (60) of this Complaint and incorporates the same by reference as though set forth at length herein.

114. Section 1681e(d)(1) of the FCRA requires that a CRA provide, to any person who regularly and in the ordinary course of business furnishes information about any consumer to the consumer reporting agency ("Furnisher"), a "Notice to Furnishers of Information: Obligations under the FCRA" ("Furnisher Notice").

115. Section 1681e(d)(2) requires that a CRA provide, to any person to whom it provides a consumer report ("Users"), a "Notice to Users of Consumer Reports:  Obligations to Users under the FCRA" ("User Notice").

116. The Furnisher Notices and User Notices inform Furnishers and Users of their responsibilities under the FCRA, such as a Furnisher's responsibility to provide accurate information or a User's responsibility to provide adverse action notice.

117. Upon information and belief, PublicData has failed to provide Furnisher Notices to Furnishers as required by the FCRA.

118. Upon information and belief, PublicData has failed to provide User Notices to Users as required by the FCRA.

119. PublicData's conduct in violation of section 1681e(d) of the FCRA was and is willful.  PublicData acted in deliberate or reckless disregard of its obligations and the rights of applicants and employees, including Plaintiff and class members.  PublicData's  willful conduct is reflected by, among other things, the plain language of the statute, FTC guidance documents, the fact that PublicData expressly acknowledges the FCRA but disclaims responsibility to comply with its requirements, and the fact that PublicData was previously sued for FCRA

violations prior to the occurrence of the facts alleged in this Complaint.

120. As a result of PublicData's conduct described herein and its willful violations of Sections 1681e(d), Plaintiff and the class have suffered harm as described herein.

121. Plaintiff, on behalf of himself and all class members, seeks all available remedies pursuant to 15 U.S.C. § 1681n, including statutory damages and/or actual damages, punitive damages, and attorneys' fees and costs.

122. In the alternative to Plaintiff's allegation that these violations were willful, Plaintiff alleges that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C. § 1681o.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF THE FAIR CREDIT REPORTING ACT,**

**15 U.S.C. § 1681b(b)(1)**

**(Against PublicData)**

123. Plaintiff hereby re-alleges the allegations contained in paragraphs one (1) through sixty (60) of this Complaint and incorporates the same by reference as though set forth at length herein.

124. Section 1681b(b)(1) provides that a CRA may not furnish a consumer report for employment purposes unless the person who obtains the report certified to the CRA that he or she has complied with certain disclosure requirements set forth in section 1681b(b)(2) and the adverse action requirements set forth in section 1681b(b)(3), and also certifies that the information from the consumer report will not be used in violation of any applicable federal or state equal employment opportunity law or regulation. The CRA must also provide with the report the FCRA Summary of Rights promulgated by the FTC and Bureau of Consumer Financial Protection.

125. The foregoing disclosure requirements are mandated in order to inform consumers that a consumer report may be used for employment purposes and inform employers that they must provide consumers with certain information if any adverse action is taken based in whole or in part on the report.

126. PublicData has furnished consumer reports for employment purposes but has failed to comply with section 1681b(b)(1). In particular, PublicData has failed to obtain certifications from persons who procure consumer reports for employment purposes (such as Waffle House) ensuing compliance with sections 1681b(b)(2) and 1681b(b)(3), nor did PublicData provide such persons with the FCRA Summary of Rights promulgated by the FTC and Bureau of Consumer Financial Protection.

127. PublicData's conduct in violation of section 1681b(b)(1) of the FCRA was and is willful. PublicData acted in deliberate or reckless disregard of its obligations and the rights of applicants and employees, including Plaintiff and class members. PublicData's willful conduct is reflected by, among other things, the plain language of the statute, FTC guidance documents, the fact that PublicData expressly acknowledges the FCRA but disclaims responsibility to comply with its requirements, and the fact that PublicData was previously sued for FCRA violations prior to the occurrence of the facts alleged in this Complaint.

128. As a result of PublicData's conduct described herein and its willful violations of Sections 1681b(b)(1), Plaintiff and the class have suffered harm as described herein.

129. Plaintiff, on behalf of himself and all class members, seeks all available remedies pursuant to 15 U.S.C. § 1681n, including statutory damages and/or actual damages, punitive damages, and attorneys' fees and costs.

130. In the alternative to Plaintiff's allegation that these violations were willful,

Plaintiff alleges that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C. § 1681o.

## EIGHTH CAUSE OF ACTION

### VIOLATION OF THE FAIR CREDIT REPORTING ACT,

### 15 U.S.C. § 1681 j(a)(1)(C) and 16 C.F.R. § 610.3

#### (Against PublicData)

131. Plaintiff hereby re-alleges the allegations contained in paragraphs one (1) through sixty (60) of this Complaint and incorporates the same by reference as though set forth at length herein.

132. Upon information and belief, PublicData is also a "nationwide specialty consumer reporting agency" as defined by the FCRA because it is "a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis relating to (1) medical records or payments; (2) residential or tenant history; (3) check writing history; (4) employment history; or (5) insurance claims." 15 U.S.C. § 1681a(w).

133. Section 1681j(a)(1)(C) of the FCRA directs the Federal Trade Commission ("FTC") to establish streamlined processes for consumers to request free annual file disclosures. The FTC promulgated the Streamlined Process Rule, which is codified at 16 C.F.R. § 610.3. The rule requires, among other things, that a nationwide specialty CRA, like PublicData, provide consumers with a toll-free number to request annual file disclosures and that the telephone number is prominently posted on any website owned or maintained by the nationwide specialty consumer reporting agency, as well as instructions to request disclosures by any additional available request methods. 16 C.F.R. § 610.3(a)(1).

134. PublicData has failed to establish the processes required by the Streamlined Process Rule. In particular, PublicData has failed to post a toll-free telephone number on its

website through which consumers can request free annual file disclosures.

135. PublicData's conduct in violation of the Streamlined Process Rule was and is willful. PublicData acted in deliberate or reckless disregard of its obligations and the rights of applicants and employees, including Plaintiff and class members. PublicData's willful conduct is reflected by, among other things, the plain language of the statute, FTC guidance documents, the fact that PublicData expressly acknowledges the FCRA but disclaims responsibility to comply with its requirements, and the fact that PublicData was previously sued for FCRA violations prior to the occurrence of the facts alleged in this Complaint.

136. As a result of PublicData's conduct described herein and its willful violations alleged hereinabove, Plaintiff and the class have suffered harm as described herein.

137. Plaintiff, on behalf of himself and all class members, seeks all available remedies pursuant to 15 U.S.C. § 1681n, including statutory damages and/or actual damages, punitive damages, and attorneys' fees and costs.

138. In the alternative to Plaintiff's allegation that these violations were willful, Plaintiff alleges that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C. § 1681o.

## NINTH CAUSE OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT,
### 15 U.S.C. § 1681k(a)(1)
### (Against PublicData)

139. Plaintiff hereby re-alleges the allegations contained in paragraphs one (1) through sixty (60) of this Complaint and incorporates the same by reference as though set forth at length herein.

140. Section 1681k(a) requires a CRA that furnishes a consumer report for

employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment to either, (a) at the time such public record information is reported, notify the consumer of the fact that public record information is being reported by the CRA, together with the name and address of the person to whom such information is being reported, or (b) maintain strict procedures designed to ensure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.

141. As alleged hereinabove, PublicData failed to timely notify Plaintiff and other class members that public record information was being reported and provide the name and address of the person to whom it was reported, and also failed to maintain any procedures to ensure that public record information likely to have an adverse effect on Plaintiff's and other class members' ability to obtain employment was complete and up to date.

142. PublicData's conduct in violation of section 1681k of the FCRA was and is willful. PublicData acted in deliberate or reckless disregard of its obligations and the rights of applicants and employees, including Plaintiff and class members. PublicData's willful conduct is reflected by, among other things, the plain language of the statute, FTC guidance documents, the fact that PublicData expressly acknowledges the FCRA but disclaims responsibility to comply with its requirements, and the fact that PublicData was previously sued for FCRA violations prior to the occurrence of the facts alleged in this Complaint.

143. As a result of PublicData's conduct described herein and its willful violations alleged hereinabove, Plaintiff and the class have suffered harm as described herein.

144. Plaintiff, on behalf of himself and all class members, seeks all available

remedies pursuant to 15 U.S.C. § 1681n, including statutory damages and/or actual damages, punitive damages, and attorneys' fees and costs.

145. In the alternative to Plaintiff's allegation that these violations were willful, Plaintiff alleges that the violations were negligent and seeks the appropriate remedy, if any, under 15 U.S.C. § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the other members of the putative classes, prays as follows:

A. For an order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed the class representative, and that Plaintiff's counsel be appointed counsel for the classes and subclasses;

B. For a declaration that Waffle House's and PublicData's practices violate the FCRA;

C. For an award of statutory, compensatory, special, general, and punitive damages according to proof against Waffle House and PublicData;

D. For an order awarding reasonable attorneys' fees and the costs of suit herein, including an award of attorneys' fees and costs pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o;

E. For an award of pre- and post-judgment interest; and

F. For such other and further relief as may be deemed necessary or appropriate.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted,

Dated:  September 11, 2015

By: /s/  Michael J. Pascucci
Fla. Bar No. 83397
Joshua H. Eggnatz, Esq.
Fla. Bar. No.: 0067926
**EGGNATZ, LOPATIN & PASCUCCI, LLP**
5400 S. University Drive, Ste. 413
Davie, FL 33328
Tel:  (954) 889-3359
Fax:  (954) 889-5913
Mpascucci@ELPLawyers.com
JEggnatz@EggnatzLaw.com

Anthony J. Orshansky* (Trial Counsel)
Alexandria R. Kachadoorian* (Trial Counsel)
Justin Kachadoorian* (Trial Counsel)
COUNSELONE, PC
9301 Wilshire Boulevard Suite 650
Beverly Hills, CA 90210
Tel: (310) 277.9945
Fax: (424) 277.3727
anthony@counselonegroup.com
alexandria@counselonegroup.com
justin@counselonegroup.com

* Pro hac vice motions to be filed

Trial Counsel for Plaintiff William Jones
and the Proposed Class