**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**WILLIAM JONES,
On behalf of himself and  others similarly
situated,**

          **Plaintiff,**

**v.**

**WAFFLE HOUSE, INC., a Georgia
corporation, WH CAPITAL, LLC, A
Georgia limited liability company, THE
SOURCE FOR PUBLIC DATA, L.P. dba
PUBLICDATA.COM, a foreign limited
partnership, SHADOWSOFT, INC., a
foreign corporation, HARLINGTON-
STRAKER-STUDIO, INC., a Texas
corporation, and DALE BRUCE
STRINGFELLOW, an individual,**

          **Defendants**

            **No. 6:15-cv-1637-Orl-37DAB**

**<u>MOTION TO DISMISS, OR IN THE ALTERNATIVE TO STAY
PROCEEDING, AND TO COMPEL ARBITRATION AND INCORPORATED
SUPPORTING MEMORANDUM OF LAW</u>**

COME NOW the Defendants, Waffle House, Inc. and WH Capital, LLC ("Waffle
House"), by and through undersigned counsel, and hereby move this Court to dismiss William
Jones' ("Plaintiff") Class Action Complaint, or in the alternative, stay the proceedings, and
compel arbitration.  In support of this motion, Waffle House would show:

1.        Plaintiff applied for a position at a Waffle House in December 2014, but he was
not hired.

2.        On October 1, 2015, Plaintiff filed this action against Waffle House asserting
class action claims under the Fair Credit Reporting Act ("FCRA").

3.    In February 2016, Plaintiff again applied for a job with Waffle House, but at a different location than his previous application.  He was hired for this position.

4.    In February 2016, Plaintiff voluntarily signed an arbitration agreement.

5.    Pursuant to the arbitration agreement, Plaintiff agreed to arbitrate claims against Waffle House.  In addition, the arbitration agreement includes a class action waiver, precluding Plaintiff from litigating his claims as a class action.

6.    Plaintiff has refused to comply with his obligation to arbitrate to date.

7.    Undersigned counsel certifies that pursuant to Local Rule 3.01(g), he has conferred with Plaintiff's counsel in an effort to resolve this dispute but the parties have been unable to agree on a resolution.

WHEREFORE, Waffle House respectfully requests this Court enter an Order granting the motion and dismissing Plaintiff's Complaint, or in the alternative, staying the proceedings, and compelling arbitration.

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE TO STAY PROCEEDINGS, AND TO COMPEL ARBITRATION

Waffle House files this Memorandum in Support of its Motion to Dismiss, or in the Alternative Stay the Proceedings, and to Compel Arbitration.  Plaintiff has entered into a binding arbitration agreement that requires him to arbitrate his claims against Waffle House.  He has refused to comply with his obligation to arbitrate to date.  The Court should compel arbitration.

### BACKGROUND

In December of 2014, Plaintiff applied for a position at a Waffle House location in Florida.  He did not get the job.  Waffle House's decision not to hire him was not based on any background check allegedly obtained on him.  Nonetheless, Plaintiff brought the present action in October 2015 (the "Lawsuit") for alleged violations of the FCRA on the theory that Waffle

House improperly utilized a background check on him in connection with employment.  These allegations are baseless, as Waffle House has argued in its Motion to Dismiss that is currently pending before the Court.

In February 2016, after Plaintiff filed the Lawsuit, he applied for employment *again* at a different Waffle House location in Missouri.  Waffle House's corporate management, based at the company's corporate offices in Norcross, Georgia, was unaware of this application.  Because Waffle House has a genuine interest in hiring job applicants, Waffle House hired Plaintiff.  As a result, Plaintiff is currently suing Waffle House in the Lawsuit, claiming he was unlawfully denied employment, and yet in February he was hired by a Waffle House subsidiary.  He worked for this subsidiary for approximately six weeks before abandoning his job approximately two weeks ago.[1]

When Plaintiff applied to Waffle House in February of 2016, he signed an arbitration agreement.  This arbitration agreement requires Plaintiff to arbitrate the claims against Waffle House in the Lawsuit, regardless of whether the claims arose before or after Plaintiff signed the arbitration agreement.  Moreover, the agreement provides that any disputes regarding the enforceability of the agreement must be decided by the arbitrator, not the Court.  In addition, the agreement includes a class action waiver that precludes Plaintiff from arbitrating his claims as a class or collective action.

The U.S. Supreme Court and the Eleventh Circuit have repeatedly confirmed that courts must rigorously enforce arbitration agreements.  National policy favors arbitration.  For the reasons below, the Court should compel Plaintiff's individual claims against Waffle House to

---

[1] Waffle House's subsidiary is included in the collective term "Waffle House" for the purposes of this memorandum.  As discussed below, the arbitration agreement at issue applies to Waffle House, Inc. and its subsidiaries and affiliates.  The fact that Plaintiff applied to a subsidiary is irrelevant for purposes of this motion to compel.

arbitration and dismiss Plaintiff's class claims with prejudice in light of his class action waiver. To the extent Plaintiff raises any questions regarding the applicability or enforceability of the arbitration agreement, those questions are for the arbitrator to decide, not the Court.

<u>FACTS</u>

A.    <u>Background of Plaintiff's Lawsuit and Applications to Work at Waffle House</u>

1.    Plaintiff applied to work at a Waffle House restaurant in Ormond Beach, Florida on or about December 6, 2014.  He ultimately did not receive the job for which he applied. (Bradshaw Decl. ¶¶ 7-8 & Ex. A, attached as **Exhibit 1**).

2.    Nearly a year later, on October 1, 2015, Plaintiff filed this Lawsuit against Waffle House.  In the Lawsuit, Plaintiff has asserted three class action claims against Waffle House under the FCRA.  (ECF 1).

3.    Each of Plaintiff's claims against Waffle House arises out of, and pertains to, his employment.  In Count One, Plaintiff claims that Waffle House obtained a background check on him in connection with his employment without following proper procedures under the FCRA. (Compl. ¶¶ 64-66).  In Counts Two and Three, Plaintiff claims that Waffle House violated the FCRA by taking adverse employment action against him without following proper procedures. (Compl. ¶¶ 77, 86).

4.    In February of 2016, despite the fact that Plaintiff was suing Waffle House in the Lawsuit, Plaintiff applied to work at a Waffle House once again.  (Bradshaw Decl. ¶ 9).

5.    Specifically, on February 2, 2016, Plaintiff applied to work at a Waffle House restaurant in Kansas City, Missouri ("Unit 1006").  Unit 1006 is operated by a Waffle House subsidiary.  (Bradshaw Decl. ¶ 10).

6.      Waffle House's corporate management, based at the company's corporate offices in Norcross, Georgia, had no knowledge of Plaintiff's employment application.   Plaintiff voluntarily applied to work at Waffle House.  (Bradshaw Decl. ¶ 11).

7.      Plaintiff's February 2016 application was successful.  He was hired on or about February 4, 2016 and worked at Unit 1006 for six pay-weeks.  Plaintiff ceased working at Waffle House on or about March 13, 2016 when he "no call / no showed" for his shift at Unit 1006 (i.e. failed to report to work as scheduled / quite without notice).  (Bradshaw Decl.¶¶ 12-13 & Exs. B & C).

**B.      Plaintiff is Required to Arbitrate Pursuant to Waffle House's Arbitration Program**

8.      Waffle House has a comprehensive arbitration program that provides for mutual arbitration as the sole means of resolving disputes.  (Bradshaw Decl. ¶ 14).

9.      The arbitration program utilizes paper and electronic arbitration agreements, depending on the type of applicant applying to work at Waffle House.  (Bradshaw Decl. ¶ 15).

10.      With respect to a paper arbitration agreement, a prospective employee is provided with a paper arbitration agreement prior to the time he or she begins work at Waffle House. (Bradshaw Decl. ¶ 16).

11.      Prospective employees who receive paper arbitration agreements receive them from local restaurant management as part of the on-boarding process.  (Bradshaw Decl. ¶ 17).

12.      Restaurant management does not consult with Waffle House's legal department or other corporate management before asking applicants to sign an arbitration agreement.  Rather, the request for an applicant to sign an arbitration agreement is Waffle House's standard practice for all employees – managers and hourly (non-management) associates alike.  (Bradshaw Decl. ¶ 18).

13.    Pursuant to Waffle House's standard process, Plaintiff was required to sign an arbitration agreement when he began his job in February of 2016.  He voluntarily signed this agreement on February 4, 2016 (the "Arbitration Agreement" or the "Agreement").  (Bradshaw Decl. ¶¶ 19-20 & Ex. D).[2]

14.    In signing the Agreement, Plaintiff acknowledged he had carefully read the entire Agreement and that he entered into it voluntarily.  (Bradshaw Decl. ¶ 21 & Agreement p. 4).

**C.    Relevant Provisions of the Arbitration Agreement**

15.    The Arbitration Agreement is a binding agreement to arbitrate claims between Plaintiff and Waffle House.  Waffle House is defined to include "Waffle House, Inc. and all of its subsidiaries and affiliates…."  (Agreement ¶ 1).

16.    The Agreement requires Plaintiff and Waffle House to resolve through arbitration "all claims and controversies" that fall within the scope of the Agreement.  (Agreement ¶ 2).

17.    The "claims and controversies" that fall within the Agreement's reach are quite broad.  They include:

> [A]ll claims and controversies ('claims'), **past, present, or future**, **arising out of any aspect of or pertaining in any way to my employment**, and specifically including, but not limited to, termination from employment, that I may have against Waffle House or against its officers, directors, employees or agents in their capacity as such or otherwise….  (Agreement ¶ 2) (emphasis added).

18.    Claims and controversies also expressly include, but are not limited to, claims for "discrimination" "under Title VII of the Civil Rights Act of 1964" and "claims for violation of **any federal**, state or other governmental **law, statute, regulation or ordinance**."  (Agreement ¶ 2) (emphasis added).

---

[2] Plaintiff signed the Arbitration Agreement after Waffle House filed its Motion to Dismiss in this matter.  (ECF 41).

19.     The Arbitration Agreement also includes a waiver of any class action or collective

action claims.  Specifically, the Agreement states that:

> Neither party shall be entitled to: (i) join or consolidate claims in arbitration by or
> against other employees, (ii) arbitrate any claim against the other party as a
> purported representative proceeding or join as a purported member of an alleged
> class action, collective action, or purported representative proceeding….
> (Agreement ¶ 3).

20.     The Agreement also includes a delegation provision that requires disputes

regarding the enforceability of the Agreement to be decided by the arbitrator.  According to this

provision, "**[t]he Arbitrator, and not any federal, state, or local court or agency, shall have**

**authority to resolve any dispute relating to the interpretation, applicability, enforceability**

**or formation of this Agreement**, including but not limited to any claim that all or any part of

this Agreement is void or voidable."  (Agreement ¶ 9) (emphasis added).

21.     Waffle House's counsel has demanded that Plaintiff arbitrate his claims against

Waffle House.  To date, Plaintiff has refused to dismiss the Lawsuit against Waffle House and

bring his claims on an individual basis in arbitration.

<u>ARGUMENT</u>

**A.     <u>Federal Policy Strongly Favors the Enforcement of Arbitration Agreements.</u>**

The Arbitration Agreement is governed by the Federal Arbitration Act ("FAA").  (*See*

Agreement ¶ 13) ("I acknowledge that this agreement should be construed in a manner consistent

with the principles and provisions of the Federal Arbitration Act.").  "'The principal purpose of

the [Federal Arbitration Act (FAA)] is to ensure private arbitration agreements are enforced

according to their terms.'"  *Kaspers v. Comcast Corp.*, No. 15-12066, 2015 U.S. App. LEXIS

19843, at *6 (11th Cir. 2015) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)).

When interpreting arbitration agreements under the FAA, federal courts exercise an

overwhelming presumption in favor of arbitration.  According to the Eleventh Circuit, "[t]he

FAA places arbitration agreements on equal footing with all other contracts and sets forth a **clear presumption—'a national policy'—in favor of arbitration**." *Parnell v. CashCall, Inc.,* 804 F.3d 1142, 1146 (11th Cir. 2015) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)) (emphasis added). The Eleventh Circuit has recognized that this national presumption in favor of arbitration requires courts to "'**rigorously enforce' arbitration agreements**." *Matthews v. Ultimate Sports Bar, LLC*, 621 F. App'x 569, 571 (11th Cir. 2015) (citations omitted) (emphasis added).

To enforce an arbitration agreement, a court must only find that the plaintiff entered into an arbitration agreement that is enforceable and that the claims fall within the scope of the agreement. *See Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). Because of the national policy in favor of arbitration, courts throughout the Eleventh Circuit frequently enforce arbitration provisions, including in the employment context. *See, e.g. Lambert*, 544 F.3d at 1199 (enforcing an arbitration provision in the employment context); *Smith v. Beverly Hills Club Apts., LLC*, No. 1:15cv23450, 2016 U.S. Dist. LEXIS 10180, at *23-34 (S.D. Fla. Jan. 28, 2016) (enforcing an arbitration provision in the employment context); *Hernandez v. Acosta Tractors, Inc.*, No. 15-23486, 2015 U.S. Dist. LEXIS 153209, at *5-6 (S.D. Fla. Nov. 12, 2015) (enforcing an arbitration provision in the employment context).

Courts have also consistently held that claims arising under federal statutes, including federal consumer protection statutes, are properly subject to enforceable arbitration agreements. *See, e.g. CompuCredit Corp. v. Greenwood,* 132 S.Ct. 665, 673 (2012) (enforcing an arbitration agreement in the context of the Credit Repair Organizations Act); *Williams v. Omainsky*, No. 15-0123-WS, 2015 U.S. Dist. LEXIS 162622, at *20-21 (S.D. Ala. Dec. 3, 2015) (enforcing an arbitration provision in the context of the Fair Labor Standards Act); *Johnson v. Springleaf Fin.*

*Servs.*, No. 2:15cv1268, 2015 U.S. Dist. LEXIS 110103, at *5-6 (N.D. Ala. Aug. 20, 2015) (enforcing an arbitration provision in the context of an FCRA case).

Here, the binding Arbitration Agreement requires the Court to dismiss the Lawsuit as to Waffle House and order the Parties to arbitration. To the extent Plaintiff challenges the enforceability of the Arbitration Agreement, the threshold issue of arbitrability is an issue for the arbitrator, not the Court.

**B.   Any Questions Relating to the Interpretation, Applicability, Enforceability and Formation are to be Determined by the Arbitrator, Not the Court**

The plain language of the Arbitration Agreement requires that the arbitrator, and not any federal court or agency, is to decide threshold questions of arbitrability. Pursuant to *Rent-A-Center, West, Inc. v. Jackson*, any questions regarding validity, enforceability, or scope of the Arbitration Agreement must be decided by the arbitrator.

The United States Supreme Court and the Eleventh Circuit recognize that "parties may agree to commit even threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable." *Parnell*, 804 F.3d at 1146 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010)). These threshold issues can also include "whether the parties have agreed to arbitrate" and "whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 69. *See also Githieya v. Global Tel*Link Corp.,* No. 1:15cv0986, 2016 U.S. Dist. LEXIS 8573, at *8 (N.D. Ga. Jan. 25, 2016) ("It is by now well established that 'parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'") (quoting *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246 (11th Cir. 2014)).

In *Rent-A-Center*, for example, the Supreme Court held that parties are free to agree to a "delegation provision" that delegates threshold issues of arbitrability to the arbitrator. With this

understanding, the Court in *Rent-A-Center* upheld the District Court's conclusion that the parties had agreed that the arbitrator would decide the enforceability of the arbitration agreement at issue.  *See Rent-A-Center*, 561 U.S. at 66, 76.  In that case, the delegation provision stated as follows:

> [t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable."

*Id.* at 66.

The Arbitration Agreement in the present case contains virtually identical language to the delegation provision in *Rent-A-Center*.  Specifically, the provision here states:

> The Arbitrator, and not any federal, state, or local court or agency, shall have authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable.

(Agreement ¶ 9).

This provision requires the arbitrator, and not the Court, to decide whether the Arbitration Agreement applies to the present dispute.  Courts repeatedly hold that similar delegation provisions clearly and unmistakably commit threshold questions of arbitrability to the arbitrator. *See Githieya*, 2016 U.S. Dist. LEXIS 8573, at *9 ("Here, the delegation clause clearly and unmistakably commits 'interpretation, applicability, enforceability or formation of the[] Terms of Use' to resolution by an arbitrator."); *Pantoja v. Rent-A-Center, Inc.*, No. 6:10-cv-1023, 2010 U.S. Dist. LEXIS 77384, at *5 (M.D. Fla. July 30, 2010) (holding, based on a similar delegation provision, that "[t]he parties' clearly and unmistakably agreed that the arbitrator — and not the Court — would decide all questions regarding the arbitrability and enforceability of their agreement.").

Here, the Court must dismiss the Lawsuit as to Waffle House and compel arbitration of Plaintiff's individual claims. Any questions regarding the enforceability or scope of the Arbitration Agreement must be left to the arbitrator pursuant to the Parties' delegation provision.

## C.    The Arbitration Agreement is Valid and Enforceable

Even if the Court were to decide that it has a role in the initial determination of arbitrability, despite the delegation provision, the Court should compel arbitration here. The Arbitration Agreement is valid and enforceable.

"The question of whether a valid agreement to arbitrate exists is a question of contract formation." *Sundial Partners, Inc. v. Atl. St. Capital Mgmt. LLC*, No. 8:15-cv-861, 2016 U.S. Dist. LEXIS 31617, at *12 (M.D. Fla. Jan. 8, 2016) (citations omitted). "Under Georgia contract law, '[a] definite offer and complete acceptance, for consideration, create a binding contract.'"[3] *McBride v. Gamestop, Inc.*, No. 1:10cv-2376, 2011 U.S. Dist. LEXIS 12615, at *6 (N.D. Ga. Feb. 8, 2011) (citations omitted). Each of these elements is satisfied here.

"[A]n 'offer' is the 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Payne v. WBY, Inc.*, No. 1:14-cv-913, 2015 U.S. Dist. LEXIS 151496, at *10-11 (N.D. Ga. Sept. 10, 2015) (citations omitted). As set forth in the Arbitration Agreement, Waffle House offered Plaintiff the Arbitration Agreement as a mutual promise to arbitrate either party's claims against each other. The Arbitration Agreement unequivocally manifested a willingness on Waffle House's behalf to enter into a mutual arbitration agreement with Plaintiff in a manner that invited Plaintiff's assent. This constitutes a valid offer.

---

[3] The Arbitration Agreement contains a choice of law provision requiring the application of Georgia law.  (*See* Agreement ¶ 13) ("Accordingly, this Agreement shall be governed by and interpreted in accordance with the laws of the state of Georgia.").

Plaintiff accepted the Arbitration Agreement. The last page of the Arbitration Agreement states in bold, capitalized, letters:

**I ACKNOWLEDGE THAT I HAVE CAREFULLY READ *ALL 4 PAGES* OF THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS, AND THAT I HAVE ENTERED INTO IT VOLUNTARILY. I UNDERSTAND THAT BY SIGNING THIS AGREEMENT, I AM GIVING UP MY RIGHT TO A JURY TRIAL.**

(Agreement p. 4). Plaintiff initialed the Arbitration Agreement immediately below this paragraph. In addition, Plaintiff signed the Arbitration Agreement, printed his name below his signature, and entered his Social Security Number. By signing the Arbitration Agreement, Plaintiff manifested his acceptance of the Agreement. *See McBride*, 2011 U.S. Dist. LEXIS 12615, at *7 ("In this case, the Plaintiffs' signatures on the Acknowledgment Form demonstrate that they were, at a minimum, aware of the Arbitration Agreement, and they are bound by what they sign.") (citations omitted). Moreover, Plaintiff continued working at Waffle House after the execution of the Arbitration Agreement. This continued employment also signifies acceptance. *See id.* at *8 ("Once Plaintiffs became aware of the Arbitration Agreement, their continued employment constituted acceptance of the Arbitration Agreement's terms.") (citations omitted).

The Arbitration Agreement is also supported by adequate consideration. "Under Georgia law, a mutual exchange of promises constitutes adequate consideration." *Jackson v. Cintas Corp.*, 425 F.3d 1313, 1318 (11th Cir. 2005) (citations omitted). Here, the Parties made mutual promises to submit all covered disputes to binding arbitration. (*See* Agreement p. 1). This is adequate consideration. In addition, the Arbitration Agreement expressly acknowledges that it is being signed by Plaintiff "as a condition of Waffle House's offer of employment" and his "acceptance of that offer of employment." (*See* Agreement p. 1). This is also sufficient consideration to support the Agreement. *See, e.g. Hernandez*, 2015 U.S. Dist. LEXIS 153209, at

*5 ("His continued employment served as sufficient consideration for his agreement to arbitrate.") (citations omitted).

The Arbitration Agreement is supported by a proper offer, proper acceptance, and adequate consideration.  It is a valid and enforceable agreement to arbitrate claims.

**D.**    **Plaintiff's Claims Against Waffle House are Within the Scope of the Arbitration Agreement**

Not only is the Agreement valid and enforceable, but Plaintiff's claims also fall within the scope of the Arbitration Agreement.  "When federal courts interpret arbitration agreements, state contract law governs and directs the courts' analyses of whether the parties committed an issue to arbitration."  *Parnell*, 804 F.3d at 1147 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  This determination must be made, however, "with a healthy regard for the federal policy favoring arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

The Arbitration Agreement defines the covered claims quite broadly.  According to the Agreement, it applies to:

> [A]ll claims and controversies ("claims"), **past, present, or future**, arising out of **any aspect of** or **pertaining in any way** to **my employment**, and specifically including, but not limited to, termination from employment….

(Agreement ¶ 2) (emphasis added).  The Agreement further provides that arbitrable claims include "claims for discrimination or harassment" "under Title VII of the Civil Rights Act of 1964" and "claims for violation of **any federal**, state or other governmental law, **statute**, regulation or ordinance…."  (Agreement ¶ 2) (emphasis added).  Plaintiff's claims against Waffle House fall squarely within the teeth of the Arbitration Agreement.  To the extent there are any doubts, then those "'doubts concerning the scope of arbitrable issues should be resolved in

favor of arbitration.'" *Wiand v. Schneiderman*, 778 F.3d 917, 922 (11th Cir. 2015) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25).

Plaintiff brings three claims against Waffle House in his Complaint. Each of his claims arises under the FCRA – a federal statute. The claims all pertain to employment with Waffle House. (*See, e.g.* Compl. ¶¶ 45, 47). For example, in Count One, Plaintiff claims that Waffle House violated the FCRA by allegedly improperly obtaining a background check on him in connection with employment. (Compl. ¶¶ 62-66). According to Plaintiff, this alleged improper obtainment included the use of background checks in a manner that "violates Title VII of the Civil Rights Act of 1964." (Compl. ¶ 46). In Counts Two and Three, Plaintiff claims that Waffle House violated the FCRA through the process it followed when it allegedly took adverse employment action against him. (Compl. ¶¶ 21-23). In other words, Plaintiff alleges that Waffle House failed to follow proper procedures when it allegedly "denied his application for employment." (Compl. ¶ 23).

These claims all "arise out of any aspect of," and "pertain[] in any way" to Plaintiff's employment. (Agreement ¶ 2). In fact, Plaintiff uses the term "employ" in one form or another (i.e. employment, employee, employer) over seventy-five times in his Complaint. These allegations alone are sufficient to trigger the Arbitration Agreement.

The Arbitration Agreement also states, however, that it applies to claims for the violation of any federal statute. (Agreement ¶ 2). The FCRA is a federal statute. Thus, Plaintiff's claims fall within this provision of the Arbitration Agreement as well. Moreover, Plaintiff specifically alleges that Waffle House's policies violate Title VII of the Civil Rights Act of 1964. The Arbitration Agreement specifically references "Title VII of the Civil Rights Act of 1964" as a source of claims that fall within its reach. (Agreement ¶ 2). Accordingly, there are multiple

adequate and independent bases for concluding that Plaintiff's claims fall within the scope of the
Arbitration Agreement.

        **a)**        **The Timing of the Arbitration Agreement Does not Impact Arbitrability**

Because the substance of Plaintiff's claims is unambiguously within the reach of the
Arbitration Agreement, Plaintiff may argue that the timing of the Agreement precludes
arbitration here.  Although Plaintiff executed the Arbitration Agreement after bringing his
Complaint against Waffle House, any argument that this timing limits the arbitrability of his
claims is a non-starter.  Courts routinely find that arbitration agreements as broad as Waffle
House's apply retroactively to claims pre-dating the agreement itself.

"'[A]n arbitration agreement may be applied retroactively to transactions which occurred
prior to execution of the arbitration agreement.'"  *Ferriol v. Parrillada Las Vacas Gordas, Inc.*,
No. 15-20636, 2015 U.S. Dist. LEXIS 56934, at *5 (S.D. Fla. Apr. 30, 2015) (citations omitted).
This proposition is "well settled."  *Monteverde v. W. Palm Beach Food & Bev.*, No.
9:15cv81203, 2016 U.S. Dist. LEXIS 38649, at *16-17 (S.D. Fla. Mar. 23, 2016) (citations
omitted) ("It is well settled that '[a]n arbitration agreement may be applied retroactively to
transactions which occurred prior to execution of the arbitration agreement.'").  In fact, "[i]n the
Eleventh Circuit, an express agreement to arbitrate prior claims is not necessary."  *Mayfield v.
Comcast Cable Communs. Mgmt., LLC*, No. 1:15cv483, 2015 U.S. Dist. LEXIS 176285, at *6
(N.D. Ga. June 19, 2015) (citations omitted).  When an arbitration agreement between two
parties is broad, there is presumed to be no temporal limitation as to the claims.  *Id.* at *6-7.
"[T]he time at which a claim arises is not a material inquiry."  *Id.* at *7.

Plaintiff voluntarily applied to Waffle House and accepted employment with Waffle
House after initiating the Lawsuit.  The Arbitration Agreement he signed is presumed to have

retroactive effect.  In addition, the Agreement explicitly states that it applies to all claims and controversies "past, present, or future."  (Agreement ¶ 2).  This cements the fact that Plaintiff's claims are covered by the Arbitration Agreement.  Any argument to the contrary is a non-starter.

### b) Courts Routinely Find FCRA Claims to be Arbitrable

Courts also routinely compel FCRA claims like Plaintiff's to arbitration.  There is nothing unique about the FCRA that precludes or minimizes an agreement to arbitrate.  *See Johnson*, 2015 U.S. Dist. LEXIS 110103, at *6 ("Although the Eleventh Circuit has not spoken on the issue, at least one other Circuit Court, as well as other District Courts within this Circuit, have held that FCRA claims are arbitrable."); *Campbell v. Verizon Wireless, LLC,* No. 14-0517, 2015 U.S. Dist. LEXIS 10707, at *35 (S.D. Ala. Jan. 29, 2015) (finding nothing in the FCRA bars arbitration of FCRA claims);  *Obremski v. Springleaf Fin. Servs.*, No. 8:12cv1594, 2012 U.S. Dist. LEXIS 112564, at *2, 8 (M.D. Fla. Aug. 10, 2012) (compelling arbitration of an FCRA claim).  Thus, as a matter of law, the Court should compel Plaintiff's claims against Waffle House to arbitration.

### E. Plaintiff Waived the Right to Proceed on a Class, Collective, or Representative Basis

Not only did Plaintiff agree to arbitrate the dispute at issue, he affirmatively waived his right to proceed on a class, collective, or representative basis.  In signing the Arbitration Agreement, Plaintiff explicitly agreed that he could not "arbitrate any claim against the other party as a purported representative proceeding or join as a purported member of an alleged class action, collective action, or purported representative proceeding."  (Agreement ¶ 3).  He also agreed that he would not be entitled to "join or consolidate claims in arbitration by or against other employees."  (*Id.*).

"A [c]ourt must enforce the parties' arbitration agreement as written, including its clear mandate that the arbitration proceed on an individual basis." *Sanchez v. J.P. Morgan Chase Bank, N.A.*, No. 14-20468, 2014 U.S. Dist. LEXIS 113608, at *11 (S.D. Fla. Aug. 15, 2014) (citations omitted).  Given this requirement, "[t]he Supreme Court and the Eleventh Circuit have repeatedly rejected challenges to class action waivers in arbitration agreements." *Id.*  When a party subject to binding arbitration waives his or her right to proceed on a class basis, the court must dismiss the class claims and only allow the individual claim to go forward.  *See Levison v. Mastec, Inc.,* No. 8:15cv1547, 2016 U.S. Dist. LEXIS 12937, at *2 (M.D. Fla. Feb 3, 2016) ("[T]he trend in the Eleventh Circuit is to uphold class waivers in employment contracts."); *Curbelo v. Autonation Benefits Co.*, No. 14-CIV- 62736, 2015 U.S. Dist. LEXIS 18788, at *8-9 (S.D. Fla. Feb. 17, 2015) (upholding a class action waiver in an arbitration agreement); *Luciana De Oliveira v. Citicorp N. Am., Inc.*, No. 8:12cv251, 2012 U.S. Dist. LEXIS 69573, at *5-7 (M.D. Fla. May 18, 2012) (enforcing a collective action waiver in an arbitration agreement).

Courts inside and outside of the Eleventh Circuit routinely enforce class action waivers in arbitration agreements.  Enforcement is necessary here.  Plaintiff unequivocally signed an arbitration agreement that included a class action waiver.  The Court should uphold the Agreement, compel Plaintiff to arbitrate his claims on an individual basis, and dismiss his class claims with prejudice.

## F.  Dismissal is the Appropriate Remedy

The FAA provides that once the Court determines that arbitration should be compelled, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."  9 U.S.C. 3.  Courts, however,

routinely dismiss a lawsuit rather than staying it when arbitration is compelled.  *See, e.g. Samadi
v. MBNA Am. Bank, N.A.*, 178 Fed. App'x. 863, 866 (11th Cir. 2006) (affirming the dismissal of
an action and compelling arbitration); *Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1379
(11th Cir. 2005) (affirming the dismissal of an action and compelling arbitration); *Collado v. J.
& G. Transp., Inc.*, No. 14-80467, 2015 U.S. Dist. LEXIS 41877, at *22-23 (S.D. Fla. Mar. 31,
2015) (finding dismissal of arbitrable claims to be the appropriate remedy); *Sanchez v. J.P.
Morgan Chase Bank, N.A.*, No. 14-20468, 2014 U.S. Dist. LEXIS 113608, at *13 (S.D. Fla. Aug.
15, 2014) (enforcing a class action waiver and dismissing an action so that the parties may
proceed to arbitration on an individual basis).

Here, the Court should compel arbitration on an individual basis and dismiss the Lawsuit
against Waffle House in its entirety.  Retaining jurisdiction and staying the action against Waffle
House would only serve to waste judicial resources.

### CONCLUSION

The FAA mandates the enforcement of arbitration agreements.  Courts in the Eleventh
Circuit and throughout the United States repeatedly enforce arbitration agreements, recognizing
the national policy in favor of arbitration.  For the reasons above, the Court should enforce the
Arbitration Agreement here.

WAFFLE HOUSE, INC. and
WH CAPITAL, LLC


/s/ David M. Gettings

Richard W. Smith (FL Bar No. 0013943)
Fisher Rushmer, P. A.
390 North Orange Avenue, Suite 2200
Post Office Box 3753
Orlando, Florida 32802-3753
Telephone: (407) 843-2111
Facsimile: (407) 422-1080
E-mail: mailto:rsmith@fisherlawfirm.com

John C. Lynch (admitted *pro hac vice*)
David M. Gettings (admitted *pro hac vice*)
Troutman Sanders LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1545
E-mail: john.lynch@troutmansanders.com
E-mail: david.gettings@troutmansanders.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of April, 2016, I filed the foregoing with the Court's

CM/ECF system, which will deliver notice of the filing to the following counsel of record:

### Counsel for Plaintiff William Jones

Joshua H. Eggnatz
Michael J. Pascucci
The Eggnatz Law Firm, PA
5400 S University Drive, Suite 413
1920 N Commerce Parkway
Davie, FL 33328-5313
Email: JEggnatz@ELPLawyers.com
Email: mpascucci@elplawyers.com

Alexandria R. Kachadoorian (admitted *pro hac vice*)
Anthony J. Orshansky (admitted *pro hac vice*)
Justin Kachadoorian (admitted *pro hac vice*)
CounselOne, PC
9301 Wilshire Blvd., Suite 650
Beverly Hills, CA 90210
Email: alexandria@counselonegroup.com
Email: anthony@counselonegroup.com
Email: justin@counselonegroup.com

### Counsel for Defendants The Source for Public Data, L.P., Shadowsoft, Inc., Harlington-Straker-Studio, Inc. and Dale Bruce Stringfellow

Thomas H. Loffredo
GrayRobinson, PA
401 E Las Olas Blvd Ste 1000
Ft Lauderdale, FL 33301
Email: tom.loffredo@gray-robinson.com

Ronald I. Raether , Jr.
Troutman Sanders, LLP
5 Park Plaza Ste 1400
Irvine, CA 92614-2545
949-622-2722
Fax: 949-622-2739
Email: Ronald.Raether@troutmansanders.com

Timothy St. George
Troutman Sanders, LLP
1001 Haxall Point
Richmond, VA 23219
804-697-1254
Fax: 804-698-6013
Email: tim.stgeorge@troutmansanders.com


/s/ David M. Gettings
David M. Gettings  (*pro hac vice*)
Troutman Sanders LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7747
Facsimile: (757) 687-1545
E-mail: david.gettings@troutmansanders.com

28149748