**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| WILLIAM JONES, on behalf of himself and others similarly situated, | ) ) | Case No.: 6:15-cv-01637-RBD-DAB |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| WAFFLE HOUSE, INC., *et al.*, | ) ) | |
| Defendants. | ) ) | |
| _____ | ) ) | |

**PLAINTIFF'S OPPOSITION TO THE MOTION OF WAFFLE HOUSE, INC. AND WH CAPITAL, LLC TO DISMISS OR IN THE ALTERNATIVE TO STAY PROCEEDINGS AND TO COMPEL ARBITRATION**

Plaintiff William Jones ("Plaintiff" or "Jones") submits this opposition to the motion of Waffle House, Inc. and WH Capital, LLC (collectively, "Waffle House" or "Defendant") to dismiss or in the alternative to stay proceedings and to compel arbitration.

## INTRODUCTION

After actively participating in this litigation for half a year, substantially engaging the litigation machinery, filing motions to dismiss for lack of standing and to stay discovery, propounding discovery, formulating a discovery plan, attending hearings, and receiving classwide discovery from Plaintiff, Waffle House now contends that Plaintiff's claims against it are arbitrable. Waffle House's timing is no mistake. Waffle House filed the instant motion, refused to participate in classwide discovery, and moved for a protective order with Plaintiff's deadline for class certification looming. This is an obvious ploy to hobble Plaintiff's ability to move for certification. The Court should deny Waffle House's motion.

1

First, Waffle House has waived its right to compel arbitration. It has substantially engaged the litigation machinery and makes its motion as an excuse to cease participating in this litigation proximate to Plaintiff's class certification deadline. The obvious intent was to prejudice Plaintiff's required showing under Rule 23. Plaintiff has also incurred substantial expenses, including associating with local counsel and spending hundreds of hours of attorney time on this case, all of which would have been unnecessary if this matter proceeded as an individual arbitration.

Second, the arbitration agreement does not even encompass Plaintiff's claims in this lawsuit. By its very terms the arbitration agreement applies only to claims arising during "my employment" with Waffle House. The claims asserted in this lawsuit, however, arise from a previous and unrelated application for employment, which Waffle House had rejected. Indeed it is Plaintiff's rejection from employment that entitles him to relief under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*

Moreover, the claims at issue in this lawsuit accrued and Plaintiff had already filed this action ***before*** he allegedly signed the proffered arbitration agreement. The arbitration agreement makes no reference to this lawsuit or any pre-employment dispute and cannot encompass them.

Third, to the extent Waffle House contends the arbitration agreement encompasses Plaintiff's claims herein, it is an unauthorized *ex parte* communication between counsel and a represented party. This is forbidden under ethical standards. Because the arbitration agreement was the product of unauthorized ex parte communication, it should not be enforced. The Court has the authority to regulate conduct during class actions, and it should not condone communications relating to this lawsuit with class members, let alone the class representative.

Fourth, the arbitration agreement is unconscionable.  It is an unfairly one-sided contract of adhesion that was imposed on Plaintiff as a condition of employment without affording him the opportunity to consult with counsel.

## FACTS

Plaintiff applied for a job with Waffle House in Ormond Beach, Florida in December 2014. (Compl. ¶ 21.)  During the application process Waffle House procured a consumer report on him from a consumer reporting agency and rejected his application for employment.  (*Id.* at ¶¶ 21, 23.) Before rejecting Plaintiff's application for employment, however, Waffle House failed to give Plaintiff a copy of the consumer report it had obtained on him or other FCRA-required notices. (*Id.* at ¶ 22.)  Nor did Waffle House give Plaintiff FCRA-required post-adverse action notices.  (*Id.* at ¶¶ 23, 24.)  In using Plaintiff's consumer report to reject him for employment, Waffle House also failed to provide the proper certification to the consumer reporting agency regarding the use of the consumer report.  (*Id.* at ¶ 66.)  In light of these violations Plaintiff filed this action on October 1, 2015.  [DE 1.]

After Waffle House rejected Plaintiff's application for employment, Plaintiff was unable to find steady work.  (Jones Decl. ¶ 5.)  In February 2016, after filing this action, Plaintiff applied to work at a Waffle House operated by Ozark Waffles, LLC ("Ozark") in Kansas City, Missouri.[1] Plaintiff filled out new paperwork for that position, and Ozark hired him.[2]  After Ozark hired Plaintiff it made him sign an arbitration agreement.  (Bradshaw Decl., Ex. D.)

---

[1] Waffle House contends that Ozark Waffles is a subsidiary of Waffle House (Mem. at 4) but has not adduced evidence showing that it has a controlling interest in the company.

[2] Discovery in this action shows that Waffle House ceased using Public Data to obtain consumer reports shortly after Plaintiff sent a pre-lawsuit notice of his claims.  (Orshansky Decl. ¶ 12.) Waffle House has not produced any record of obtaining a consumer report on Plaintiff following his application for employment at Ozark Waffles.  (*Id.* at ¶ 6.)

The arbitration agreement is limited by its express terms to claims "arising out of any aspect of or pertaining in any way to *my employment*, and specifically including, but not limited to, termination from employment[.]" (*Id.*; emphasis added.) The document purports to be "Prepared by Waffle House, Inc. for Corporate Office and company-owned stores only." (*Id.*) **It is countersigned for Waffle House, Inc. by Jonathan S. Waller, identified on the document as Vice President. Upon information and belief, Mr. Waller was and is general counsel for Waffle House, Inc.** *See In re Freeway Foods of Greensboro, Inc.*, 2014 WL 1652435, at *1 (Bankr. M.D.N.C. Apr. 24, 2014)( "Jonathan S. Waller, general counsel to Waffle House since 2001.").

Plaintiff worked at Ozark from February to March 2016, but quit when Ozark Waffles refused to pay his wages. (Jones Decl. ¶ 9.)

### ARGUMENT

**I.    Waffle House Waived Its Right to Arbitrate by Engaging the Litigation Machinery, and It Would Be Prejudicial to Order Arbitration Now.**

Notwithstanding an agreement to arbitrate claims, a party waives its right to arbitrate when it participates in litigation to "a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party." *Morewitz v. W. of England Ship Owners Mut. Prot. & Indem. Ass'n*, 62 F.3d 1356, 1366 (11th Cir. 1995). A party that "substantially invokes the litigation machinery prior to demanding arbitration may waive its right to arbitrate," *see Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1201 (11th Cir. 2011), such as propounding discovery relating to the merits of the lawsuit. *See Green Tree Servicing v. McLeod*, 15 So. 3d 682, 694 (Fla. Dist. Ct. App. 2009). Engaging the litigation machinery in this fashion conflicts with "[a] prime objective of an agreement to arbitrate," i.e. "to achieve streamlined proceedings and expeditious results." *In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1295 (11th Cir. 2014).

4

Despite knowing that Plaintiff signed an arbitration agreement in early February, Waffle House waited until the end of March to file its motion to compel arbitration. Its decision to wait was no mistake. The arbitration agreement permits a signatory seven days from the date of execution to opt out of arbitration. (Bradshaw Decl., Ex. D, p.3, ¶ 15.) But even though Plaintiff had previously propounded discovery asking, among other things, for all documents relating to him, Waffle House secured two extensions on its deadline to respond without breathing a word about arbitration and based on assurances, which have remained unfulfilled, that it would provide substantive responses to Plaintiff's discovery. (Orshansky Decl. ¶¶ 3-7.) Instead Waffle House served objection-only responses. (*Id.*)

Waffle House moved to compel arbitration on the eve of its deadline to respond to written discovery, refused to produce a Rule 30(b)(6) deponent, and moved for a protective order. (Orshansky Decl. ¶¶ 3-7.) These actions came in early April—proximate to Plaintiff's deadline to file a motion for class certification on June 1, 2016. [DE 72.] Their obvious intent is to hobble Plaintiff's investigation and prejudice his forthcoming motion for class certification.[3] The Court should not condone Waffle House's play to wait out the clock.

At the same time Waffle House has stonewalled Plaintiff it has actively litigated the case. This case has been pending since October 2015. During that time Waffle House has filed a motion to dismiss for lack of standing and a motion to stay discovery; participated in the parties' Rule 26(f) conference and in drafting of the case management report, including formulating a discovery plan; attended hearings; and propounded voluminous discovery to Plaintiff *after* Plaintiff signed the arbitration agreement. (Orshansky Decl. ¶ 4.) *See Snelling & Snelling, Inc. v. Reynolds*, 140

---

[3] Plaintiff intends to file a motion to amend the scheduling order [DE 72] but is mindful that the Court's deadlines are "strictly enforced."

F. Supp. 2d 1314, 1322 (M.D. Fla. 2001)(finding waiver where defendant engaged in pre-trial proceedings). The joint scheduling report submitted to the Court makes no mention of arbitration and contemplates the commencement of a jury trial. *See Garcia v. Acosta Tractors, Inc.*, 2013 WL 462713, at \*5 (S.D. Fla. Feb. 7, 2013)(finding defendant acted inconsistently with intent to arbitrate by "submitting a scheduling report which was silent as to arbitration and referenced the Plaintiffs' right to a jury trial" and after plaintiffs propounded discovery).

Plaintiff also provided initial disclosures to Waffle House and drafted extensive classwide discovery without any indication that Waffle House intended to move to compel arbitration. (Orshansky Decl. ¶ 3.) *See Krinsk*, *supra*, 654 F.3d at 1201 (finding prejudice where defendant waited to compel arbitration until after plaintiff engaged in class discovery). Plaintiff would not have undertaken the time and expense of conducting classwide discovery, or indeed perhaps even pursued this litigation further, had Waffle House apprised Plaintiff of its intent to compel arbitraiton in a timely fashion. Because the litigation expenses Plaintiff has incurred are of the kind arbitration was designed to alleviate, Waffle House caused further prejudice to Plaintiff, and therefore its belated motion to compel arbitration should be denied. *See Morewitz*, *supra*, 62 F.3d at 1366 (11th Cir. 1995).

Because Waffle House has taken actions inconsistent with an intent to arbitrate which are prejudicial to Plaintiff and the putative class, it waived whatever right it had to compel arbitration.

## II.    Plaintiff's Claims in This Lawsuit Are outside the Scope of the Arbitration Agreement.

Waffle House acknowledges that the Court cannot enforce the arbitration agreement unless Plaintiff's claims "fall within the scope of the agreement." (Mem. at 8.) And this is true. Arbitration is contractual in nature, and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Morewitz*, *supra*, 62 F.3d at 1364. *See also Sandvik*

*AB v. Advent Int'l Corp.,* 220 F.3d 99, 106 (3d Cir. 2000) ("Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect.").  There is no public policy in favor of arbitrating a dispute the parties did not agree to arbitrate.  *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995) ("[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties").

### A. This Lawsuit Does Not Involve Plaintiff's Employment with Waffle House Because Plaintiff Was Not Employed when Waffle House Violated the FCRA.

Plaintiff's claims in this lawsuit are patently outside the scope of the arbitration agreement. The arbitration agreement is limited to claims "arising out of any aspect of or pertaining in any way to *my employment*, and specifically including, but not limited to, termination from employment." (Bradshaw Decl., Ex. D, p. 1, ¶ 1; emphasis added).  This phrasing is significant. The agreement does not simply say something like "employment-related disputes," a common phrasing, or, even more broadly, "any disputes between the parties."   Rather, the agreement here, by it express terms, encompasses only to disputes pertaining to "*my* employment."  *Cf. Russell v. Citi*, 2013 WL 3489465, at *4 (E.D. Ky. July 10, 2013), *aff'd sub nom. Russell v. Citigroup, Inc.*, 748 F.3d 677 (6th Cir. 2014); *Thomas v. Carnival Corp.*, 573 F.3d 1113, 1119 (11th Cir. 2009) ("In contract interpretation, we can glean intent not only from what is said but what is not said.").

Nor is Waffle House's choice of language accidental.  Elsewhere in the same agreement Waffle House presupposes the actual formation of an employment relationship as a prerequisite to arbitration.  (Bradshaw Decl., Ex. D, p. 2, ¶ 9 ("The arbitration shall take place in or near the city in which I am or was last *employed* by Waffle House.")(emphasis added)).  Indeed Waffle House previously used an arbitration agreement that explicitly encompassed claims "***whether or not arising out of my employment*** or termination from employment, that I may have against Waffle

House." (Orshansky Decl., Ex. B (emphasis added).) But such explicit language is absent from the agreement Waffle House seeks to enforce here.

Plaintiff's FCRA claims, of course, arise from Waffle House's *denial* of a previous application for employment, not his employment with Waffle House.[4] That denial of employment was entirely separate from, and unrelated to, his subsequent application for employment and eventual hiring by Ozark Waffles in Missouri. The denial of employment giving rise to Plaintiff's claims in this case occurred ***before*** Plaintiff applied to work at Ozark in Missouri, ***before*** he was hired by Ozark, and ***before*** he signed the arbitration agreement. Plaintiff can allege and has alleged facts establishing a claim for relief under the FCRA without any reference to his subsequent employment at Waffle House. *See Varallo v. Elkins Park Hosp.*, 63 Fed.Appx. 601 (3d Cir.2003) (holding failure-to-hire claims arbitrable only when they are "inextricably intertwined" with plaintiff's actual employment).

In similar cases courts have declined to compel arbitration of claims for failure to hire (or rehire) where an arbitration agreement merely encompasses claims arising out of one's employment but does not specify pre-employment disputes. *See, e.g., Neely v. Bechtel Corp.*, 2008 WL 2120085 (M.D. Ala. May 20, 2008) (refusing to compel arbitraiton of refusal-to-hire claim where agreement provided arbitration was "the exclusive means of resolving all disputes, claims or controversies ... which arise out of or relate to employment (or its termination)."); *Leyva v. Patina Rest. Grp.*, 2015 WL 1897735, at *3 (Cal. Ct. App. Apr. 27, 2015)("At the time Patina refused to hire Leyva, there was no employment to which the failure to hire related."). *Cf. Pilitz v. Bluegreen Corp.*, No. 6:11-CV-388-ORL-19, 2011 WL 3359641, at *4 (M.D. Fla. Aug. 4, 2011)

---

[4] Waffle House's discussion of this provision reads the word "my" out of the agreement. The provision states that the parties must arbitrate any claim related to "*my* employment" with Waffle House, not Plaintiff's relationship with Waffle House.

(granting motion to compel arbitration where agreement specified "refusal to hire"); *Balandran v. Labor Ready, Inc.*, 124 Cal. App. 4th 1522, 1529, 22 Cal. Rptr. 3d 441, 446 (2004) (denying motion to compel refusal-to-hire claim even where arbitration agreement applied to "all other employment related issues").

As a court faced with a similar issue observed, "A broader arbitration clause might well have applied to preemployment disputes.  An employer may lawfully draft an arbitration agreement that clearly and unambiguously applies to preemployment disputes.  [Citation] Similarly, an employer can draft an agreement that applies to disputes whether or not the disputes arise out of employment.  [Citation]  In this case, however, Patina drafted an arbitration clause that is restricted to claims relating to its employees' employment; preemployment claims are simply not included." *Leyva*, *supra*, 2015 WL 1897735, at *4.

Consequently, the acts giving rise to this lawsuit do not "pertain to Plaintiff's employment" with Waffle House because, at that time, he was not employed by Waffle House at all; Waffle House explicitly rejected him from employment.  Indeed Plaintiff's claims against Waffle House are actionable precisely because Waffle House failed to hire him when he applied in December 2014.  The FCRA claims he alleges only arise because Waffle House took an adverse action against him by not hiring him.  (Compl. ¶ 2, 6, 46, 47 ("[B]ased on the contents of the consumer report that PublicData supplied, Waffle House refused to hire Plaintiff."), 48, 81 ("Waffle House refused to hire Plaintiff as a result of information contained in his consumer report without giving him an opportunity to identify and explain or seek correction of errors in his report"), 90.)

The arbitration agreement does not even hint that it encompasses claims for failure to hire, and especially not a failure to hire based on a previous and unrelated application.  The phrase "failure to hire" is quite common in employment law but absent entirely from the language of the

arbitration agreement Waffle House seeks to enforce.  Nor are the words "applicant" or "application" found anywhere in the agreement.  Tellingly, the agreement mentions only "termination from employment," which, of course, contemplates the actual hiring of a job applicant.  It is a stretch to contend, as Waffle House does, that the arbitration agreement encompasses claims arising from a previously rejected job application and made to an entirely different legal entity.

The Court should reject this implausible interpretation.  As the drafting party, Waffle House could have made its intention crystal clear but failed to do so.  *See McGregor v. Bd. of Comm'rs of Palm Beach Cty.*, 956 F.2d 1017, 1022 (11th Cir. 1992) ("[E]rrors in drafting must be construed against the party drafting the document"); *First Texas Sav. Ass'n v. Comprop Inv. Properties Ltd.*, 752 F. Supp. 1568, 1571 (M.D. Fla. 1990) (ambiguities interpreted against the drafter).  The arbitration agreement here is very thorough, consisting of four pages of miniscule font, but nowhere does it mention or even suggest the inclusion of preemployment claims.

As Waffle House notes (Mem. 13, 14) the agreement includes statutory claims, but only to the extent that they pertain to Plaintiff's *employment*. The reference to statutory claims appears in a bullet-point list introduced—and thus modified by—the general provision specifying the scope of the agreement to include only claims pertaining to "my employment."  *See Balandran v. Labor Ready, Inc.*, 124 Cal. App. 4th 1522, 1529 (2004) (holding in the refusal-to-hire context that that phrase "all other employment related issues" was modified and limited by prior phrase "any disputes arising out of *my employment*") (emphasis added).

So contrary to Waffle House's argument (Mem. 14-15), the references to federal statutes do not provide an independent basis for concluding Plaintiff's claims fall within the scope of the agreement.   Arguably, if this lawsuit related to a claim for failure to pay wages or wrongful

termination after February 4, 2016, those claims may be subject to arbitration because they arose from Plaintiff's employment. But Plaintiff was not an employee when Waffle House failed to comply with its legal obligations under the FCRA, so the arbitration agreement does not apply to those claims. Because Plaintiff's claims in this case are outside the scope of the arbitration agreement, Waffle House's motion should be denied.

**B. Accrued Claims That Are Already the Subject of a Pending Class Action Are Beyond the Scope of the Arbitration Agreement.**

Here, even if the Court were to find that preemployment claims could fall within the scope of the arbitration agreement, the agreement would still not encompass Plaintiff's claims—all of which accrued and, importantly, were actually ***filed*** before Plaintiff signed the arbitration agreement.

"When consumers are not advised of the rights they are forfeiting, enforceability of arbitration clauses may be restricted." *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 250 (S.D.N.Y. 2005) (citing *Brookhaven Hous. Coalition v. Solomon,* 583 F.2d 584, 593 (2d Cir.1978) ("If essential terms of an agreement are omitted ..., no legally enforceable contract will result.").) This is particularly true of an adhesion contract. *Id.*

The arbitration agreement here does not specify that it encompasses pre-existing claims that are already the subject of a pending lawsuit. Indeed the arbitration agreement makes no mention of Plaintiff's lawsuit at all. Waffle House cannot effect a waiver of Plaintiff's class claims *sub rosa*. Moreover, because this is a putative class action, Waffle House's attempt to enforce individual arbitration is an invalid attempt to foreclose relief to putative class members who, upon information and belief, never agreed to arbitration.

Notwithstanding Waffle House's argument to the contrary (Mem. 15-16), an arbitration agreement cannot be applied retroactively to accrued claims that have already been asserted in a

11

pending lawsuit, especially in a putative class action. *See, e.g., Billingsley v. Citi Trends, Inc.*, 560 Fed.Appx. 914, 922-923 (11 Cir. 2014) (upholding denial of motion to compel arbitration where defendant rolled out pre-certification agreements in attempt to "thwart unfairly the right of [opt-in plaintiffs] to make an informed choice as to whether to participate in this FLSA collective action."); *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 577 (Fla. Dist. Ct. App. 1999) ("Assuming … the arbitration clause is valid and that it can reach back to pre-existing disputes, it was not intended to apply to a dispute that has already ripened into a lawsuit."); *Azevedo v. Carnival Corp.*, 2008 WL 2261195, at *8 (S.D. Fla. May 30, 2008) (rejecting retroactive application of arbitration agreement and denying motion to compel); *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal.App.4th 50, 61 (2013) (refusing to enforce a class arbitration waiver retroactively to accrued claims after a class action had been filed); *Gregory v. Sprint Spectrum L.P.*, No. D047083, 2006 WL 2497781, at *9 (Cal. Ct. App. Aug. 30, 2006) (refusing to give arbitration agreement retroactive effect where plaintiff's lawsuit was filed before he signed the agreement); *O'Connor v. Uber Techs., Inc.*, 2013 WL 6407583, at *7 (N.D. Cal. Dec. 6, 2013) (holding arbitration agreement as to be an improper communication under Fed. R. Civ. Pro. 23(d) after lawsuit was filed); *In re Currency Conversion Fee Antitrust Litig.*, 361 F.Supp.2d 237, 252-254 (S.D.N.Y. 2005) (refusing to enforce arbitration agreement entered into after filing of class action where class members were not informed about the effect on the pending litigation); *Williams v. Securitas Sec. Servs. USA, Inc.*, 2011 WL 2713818, at *3, 8-12 (E.D. Pa. July 13, 2011) (invalidating arbitration agreement imposed on the defendant's employees during pre-certification stage of collective action and ordering corrective measures because the arbitration agreement was a "confusing and unfair communication" with the potential class members); *Balasanyan v. Nordstrom*, 2012 WL 760566 (S.D. Cal. Mar. 8, 2012) (denying motion to compel arbitration where the agreement

purported to encompass "past, present, and future disputes that otherwise would be resolved in a court of law" and required individual arbitration but did not alert putative class members of the pending class action); *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 967 (2015) (rejecting retroactive application of arbitration agreement to already filed claims); *Ex parte Hopper*, 736 So.2d 529, 534 (Ala. 1999) (denying retroactive application of arbitration agreement where class action had already been filed).

The scant authority Waffle House cites regarding retroactivity (Mem. 15) is not apposite. The court in those non-binding opinions applied an arbitration agreement to past claims that the plaintiff "brought *after* executing the Arbitration Agreement[.]" *Ferriol v. Parrillada Las Vacas Gordas, Inc.*, WL 1968848, at *3 (S.D. Fla. Apr. 30, 2015)(emphasis added); *Monteverde v. W. Palm Beach Food & Beverage, LLC*, 2016 WL 1161224, at *6 (S.D. Fla. Mar. 24, 2016) (arbitration agreement signed before the action was brought).

Plaintiff's past claims were not brought after Plaintiff signed the arbitration agreement but before. Plaintiff filed this action in October 2015, four months before he signed the arbitration agreement Waffle House seeks to enforce. If Waffle House, as the drafter, wanted the arbitration agreement to specifically encompass this lawsuit, it could have explicitly said so. But the arbitration agreement says nothing about the lawsuit at all.

Moreover, although an arbitration agreement may have retroactive effect in some circumstances, the scope of the arbitration agreement here makes it clear that it applies only to past claims pertaining to "my employment," i.e., Plaintiff's employment at the Waffle House restaurant that hired him. Thus if Plaintiff were an existing employee,[5] or had previously been employed by

---

[5] Keep in mind that this version of Waffle House's standard arbitration agreement was doubtless given to existing employees to supplant prior versions.

Waffle House, the arbitration agreement could possibly apply to claims arising previously in his employment, or in prior employment. But the language of the agreement does not suggest, let alone state, that Plaintiff must arbitrate any claims with Waffle House even when he was not an employee. In sum, Waffle House's reading of the retroactivity clause is overbroad.

In sum, the arbitration agreement cannot apply retroactively to Plaintiff's accrued and filed claims.

### C. The Arbitration Agreement Is an Unauthorized *Ex Parte* Communication with a Represented Party to the Extent It Encompasses This Lawsuit.

The arbitration agreement is countersigned by Waffle House's general counsel—that is, an attorney—Jonathan S. Waller. (Bradshaw Decl., Ex. D.) Although Waffle House takes pains to emphasize that its corporate office did not orchestrate the communication of the arbitration agreement to Plaintiff, the fact is that the agreement was doubtless drafted by counsel for Waffle House, who directed it to be delivered to employees, including in this instance Plaintiff. *See O'Connor*, *supra*, 2013 WL 6407583, at *5 (N.D. Cal. Dec. 6, 2013) ("Wilful misconduct on the defendant's part is not required so long as the effect is to interfere with class members' rights.").

Such communications even if indirect (that is, using a party as an intermediary) between counsel and a represented party are unauthorized *ex parte* communications and roundly condemned under ethical rules. *See* Fla. Bar R. Prof'l Conduct 4-4.2(a) ("[A] lawyer must not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter"); *see also id.*, cmt. ("A lawyer may not make a communication prohibited by this rule through the acts of another."); *id.* at 4-8.4 ("A lawyer shall not [¶] violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another[.]").

Thus, ethically, the arbitration agreement simply cannot encompass Plaintiff's currently

14

existing claims for which Plaintiff was, and which Waffle House knew he was, represented by counsel. Defense counsel's insistence that it does raises serious questions about their ethical conduct and may warrant disqualification. *See*, *e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, *supra*, 361 F.Supp.2d at 249 ("Defendants' communication with putative class members was improper because they sought to alter the status of this litigation and the available remedies.").

Moreover, before filing this lawsuit Plaintiff's counsel sent a letter specifically to Waffle House's general counsel advising Waffle House to direct all communications regarding this matter to Plaintiff's counsel, not Plaintiff. (Orshansky Decl. ¶ 2.) Thus neither Waffle House nor its counsel was authorized to communicate with Plaintiff regarding this matter. Waffle House bucked this directive and undertook (perhaps willfully) to change the legal standing of the parties surreptitiously. Shockingly, Waffle House's counsel failed to inform Plaintiff's counsel of the agreement to arbitrate until the 7-day opt-out period provided under the agreement had expired—despite outstanding discovery requesting any and all documents relating to Plaintiff. (*Id.* at ¶ 3.)

This Court has the authority to prevent abuse and enter appropriate orders governing the conduct of counsel and the parties in class and putative class cases. *See* Fed. R. Civ. Pro. 23(d); *O'Connor*, *supra*, 2014 WL 1760314, at *4; *In re Currency Conversion Fee Antitrust Litigation*, *supra*, 224 F.R.D. at 569. The Court should exercise that authority here by finding this lawsuit beyond the scope of the arbitration agreement. Moreover, an arbitration agreement secured in violation of the important public policy expressed in ethical rules barring *ex parte* communications with represented parties is unenforceable.

## D.  The Arbitration Agreement Is Unconscionable.

A contract (or contract provision) is unconscionable if it is procedurally and substantively unconscionable. *See Mullis v. Speight Seed Farms, Inc.*, 234 Ga. App. 27, 30 (1998). Procedural

unconscionability comprises two factors: oppression and surprise. "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* (internal quotation marks omitted). Substantive unconscionability focuses on "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Gordon v. Branch Banking & Trust Co.*, 666 F. Supp. 2d 1347, 1350 (N.D. Ga. 2009). In general, an agreement is substantively unconscionable where it is "unreasonably favorable to the more powerful party." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1145 (2013).

Here both substantive and procedural unconscionability are high. Waffle House admits that employment is conditional upon stipulating to arbitration. (Mem. at 6.) The agreement itself is a contract of adhesion presented to Plaintiff on a take-it-or-leave-it basis along with a stack of other documents, all of which Waffle House required Plaintiff to sign on the spot. (Jones Decl. ¶¶ 7, 8.) It is a dense and prolix legal document consisting of four pages of miniscule font. Plaintiff did not have a chance to carefully read the documents present to him, consider them, ask questions, or consult with an attorney before signing them. (Jones Decl. ¶¶ 7, 8.) Waffle House rushed him through the process and obtained his signatures as fast as possible (*Id.*) He had no chance to negotiate the terms. (*Id.*)

Moreover, Plaintiff was unemployed, has a criminal record, and was unable to find steady work for over a year, and he was applying for an hourly position as a server at Defendant's restaurant. (*Id.* at ¶¶ 5, 6.) Consequently, he had no bargaining power and lacked meaningful choice but to accede to the terms of the agreement. Furthermore, "If the class and the class

opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive." *In re Currency Conversion Fee Antitrust Litig.*, *supra*, 361 F.Supp.2d at 253. Therefore procedurally unconscionability is high.

The agreement is also substantively unconscionable because, purportedly, it terminates Plaintiff's previously filed class action without explicitly saying so. In this way the agreement effects the relinquishment of Plaintiff's vested right *sub rosa*. "A party acts unconscionably when it omits material information from a contract regarding the consumers' forfeiture of important protections." *See Flugge v. Flugge*, 681 N.W.2d 837, 842 (S.D. 2004) (holding that a waiver of right occurs only when one in possession of a right, "with full knowledge of the material facts, does or forebears the doing of something inconsistent with the exercise of the right"). It is simply not commercially reasonable to expect Plaintiff to relinquish the vested right he has in this lawsuit, for which he has expended substantial costs and tens of thousands of dollars (if not more) in attorney time, for the prospect of bringing an individual arbitration to resolve claims that arose prior to and have nothing whatever to do with subsequent short-lived employment at Waffle House. The effect of that relinquishment would be the expenditure of substantially more money on fees and costs that Plaintiff could hope to recover in any individual arbitration.

Because procedural and substantive unconscionability obtain, the arbitration agreement is unenforceable as interpreted by Waffle House.

### E. In the Alternative, the Court Should Permit Plaintiff to Conduct Limited, Arbitration-Related Discovery.

Motions to compel arbitration are reviewed under the standard for summary judgment. *Johnson v. KeyBank Nat'l Assoc.,* 754 F.3d 1290, 1294 (11th Cir.2014). Thus courts routinely allow plaintiffs conduct arbitration-related discovery before ruling on motions to compel arbitration. *See*, *e.g.*, *Kardonick v. Citigroup, Inc.*, 2012 WL 3594359, at *1 (S.D. Fla. Aug. 16,

2012). In the alternative to denying Waffle House's motion, the Court should permit Plaintiff to conduct discovery relating to arbitration. Such discovery would inquire into the relationship between Waffle House and Ozark and the position of Mr. Waller at the time, to the extent the Court requires factual development of these issues.

## III.    The Court and Not the Arbitrator Must Decide the Issues Raised in this Brief.

Waffle House contends that the Court should not determine gateway issues of applicability or enforceability because the agreement purports to delegate those questions to the arbitrator. (Mem. at 9.)

But even if there is a clear and unmistakable delegation provision, not all gateway questions should be sent to the arbitrator. *See Bazemore v. Jefferson Capital Sys., LLC*, No. CV 314-115, 2015 WL 2220057, at *6-7 (S.D. Ga. May 11, 2015). "If the plaintiff signed an arbitration agreement containing a delegation clause, did the plaintiff intend to go through the rigmaroles of arbitration just so the arbitrator can tell her in the first instance that her claim has nothing whatsoever to do with her arbitration agreement, and she should now feel free to file in federal court?" *Id.* at *7-7 (quoting *Douglas v. Regions Bank,* 757 F.3d 460, 464 (5th Cir. 2014).

Both the Fifth and Federal Circuits hold that gateway questions should not be delegated unless the there is a "plausible argument" that the dispute is covered by the agreement. *Douglas*, *supra*, 757 F.3d at 463; *Qualcomm Inc. v. Nokia Corp.,* 466 F.3d 1366 (Fed. Cir. 2006). Arbitration is a matter of contract, and a party does not have to arbitrate anything, even arbitrability, unless he has plausibly agreed to do so. *Douglas*, *supra*, 757 F.3d at 464. "Wholly groundless" arguments that a dispute falls within the scope of the agreement are not arbitrable. *Id.*

Here, the arbitration agreement clearly and unmistakably only encompasses claims arising from Plaintiff's employment, not pre-employment disputes involving an unrelated and previously

rejected application, and not claims that are the subject of a previously filed and pending class action. Courts are "simply unwilling to torture words to import ambiguity into a contract where the ordinary meaning leaves no room for ambiguity." *Russell v. Citi*, 2013 WL 3489465, at *4 (E.D. Ky. July 10, 2013), *aff'd sub nom. Russell v. Citigroup, Inc.*, 748 F.3d 677 (6th Cir. 2014).

Moreover, notwithstanding the delegation provision, the Court should not delegate questions implicating its managerial discretion regarding the conduct of class actions, particularly where they implicate the ethical transgressions of counsel. *See Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 924 (11th Cir. 2014) ("[O]ur affirmance of the district court's exercise of its managerial discretion does not require us to determine whether the district court lacked authority to consider issues related to the arbitration agreements' enforceability or formation."). Delegating such questions to the arbitrator would serve to authorize such questionable conduct.

Finally, the arbitration agreement is internally inconsistent with regard to who should decide gateway questions, and therefore there is no clear and unmistakable assent to delegate. Although one provision of the contract purports to give the arbitrator the power to determine arbitrability, the severability provision of the agreement states "[i]f a court of competent jurisdiction … subsequently determines Georgia law does not apply to the Agreement, then, alternatively, the Agreement shall be governed by and interpreted in accordance with the laws of the state of my residence." (Bradshaw Decl. Ex. D, p. 4, ¶ 13.) Because this provision states that a court may decide some gateway questions (i.e., the enforceability of the choice-of-law provision), the adhering party cannot be sure who will decide gateway questions. *See Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal.App.4th 1425, 140 Cal.Rptr.3d 38 (2012) (holding that a severability provision contained within the arbitration agreement created an ambiguity with the delegation provision, thus requiring the delegation provision to be construed most strongly against

the drafting party); *Commercial Credit Corp. v. Leggett*, 744 So.2d 890 (Ala. 1999) (holding that a severability clause contained within the arbitration agreement created an ambiguity with the delegation provision such that there was no clear and unmistakable evidence of intent to arbitrate issues of arbitrability).

## IV.    The Court Should Not Dismiss the Action.

Although Waffle House requests dismissal of the action (Mem. at 17-18), this request conflicts with Section 3 of the FAA, which provides that the Court must stay any suit or proceeding until arbitration has been completed if the action concerns "any issue referable to arbitration" under a written agreement. 9 U.S.C. § 3. *See Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698 (11th Cir. 1992) (reversing dismissal of arbitrable claims, remanding with instructions to enter stay, and stating that "[u]pon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration"). Dismissal is particularly inappropriate if gateway issues are referred to arbitration because any award must be confirmed or vacated.

### CONCLUSION

In light of the foregoing, Plaintiff respectfully requests that the Court deny Waffle House's motion.

Respectfully submitted,

/s/ Justin Kachadoorian
Anthony J. Orshansky
(admitted *pro hac vice*)
Alexandria R. Kachadoorian
(admitted *pro hac vice*)
Justin Kachadoorian
(admitted *pro hac vice*)
COUNSELONE, PC
9301 Wilshire Boulevard Suite 650
Beverly Hills, CA 90210
Tel: (310) 277.9945
Fax: (424) 277.3727
anthony@counselonegroup.com

alexandria@counselonegroup.com
justin@counselonegroup.com

Michael J. Pascucci
Fla. Bar No. 83397
Joshua H. Eggnatz, Esq.
Fla. Bar. No. 67926
EGGNATZ, LOPATIN & PASCUCCI, LLP
5400 S. University Drive, Ste. 413
Davie, FL 33328
Tel:  (954) 889-3359
Fax:  (954) 889-5913
Mpascucci@ELPLawyers.com
JEggnatz@EggnatzLaw.com

*Attorneys for Plaintiff William G. Jones*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of April 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

_/s/ Justin Kachadoorian_____

21