# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| WILLIAM JONES, on behalf of himself and others similarly situated,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>WAFFLE HOUSE, INC., a Georgia corporation, WH CAPITAL, LLC, a Georgia limited liability company, THE SOURCE FOR PUBLIC DATA, L.P. dba PUBLICDATA.COM, a foreign limited partnership, SHADOWSOFT, INC., a foreign corporation, HARLINGTON-STRAKER-STUDIO, INC., a Texas corporation, and DALE BRUCE STRINGFELLOW, an individual,<br><br>　　　　Defendants. | Case No.: 6:15-cv-01637-RBD-DAB<br><br>(Judge Roy B. Dalton, Jr.)<br><br>**DECLARATION OF ANTHONY J. ORSHANSKY IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE TO STAY PROCEEDING, AND TO COMPEL ARBITRATION** |

## DECLARATION OF ANTHONY J. ORSHANSKY

I, Anthony J. Orshansky, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that:

1. The facts set forth herein are based on my personal knowledge, and if I were called upon to testify to them, I could and would competently do so.

2. On March 5, 2015, I sent a letter on behalf of William Jones to Waffle House, Inc. ("Waffle House") outlining Mr. Jones's claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* A true and correct copy of that letter is attached hereto as Exhibit A. In that letter, which was addressed to Waffle House's general counsel, I instructed the recipient to "direct all correspondence regarding this matter to my office." Since sending that letter I have never given

1

Waffle House, its general counsel, or opposing counsel in this action consent to discuss this matter with my client.

3. On December 28, 2015, I served Plaintiff's initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) to Defendants herein. On or about February 5, 2016, I propounded discovery to Waffle House, including requests for production of documents and interrogatories. This discovery included extensive classwide discovery intended to elicit responses and documents pertinent to Plaintiff's forthcoming motion for class certification, as well as all documents relating to Plaintiff specifically.

4. On or about March 3, 2016, Waffle House propounded voluminous discovery to Plaintiff, including interrogatories and requests for production of documents, to which Plaintiff has since undertaken to respond.

5. On or about March 8, 2016, counsel for Waffle House Dave Gettings requested a two-week extension on Waffle House's deadline to response to Plaintiff's discovery. Based on representations that Waffle House would provide substantive (i.e., not objection-only) responses, I granted the extension.

6. On March 22, 2016, Mr. Gettings requested an additional one-week extension, which I granted.

7. Waffle House served objection-only responses to Plaintiff's discovery on March 30, 2016. After I contested the adequacy of these responses, Mr. Gettings produced limited records relating only to Plaintiff and specifically his employment with Waffle House from February to April 2016. Waffle House has not produced any record of obtaining a consumer report on Plaintiff following his application for employment at Ozark Waffles.

8. On or about March 30, 2016, I served a Rule 30(b)(6) deposition notice to Waffle House. Many of the categories I identified were pertinent to Plaintiff's forthcoming motion for class certification. The deposition was noticed for April 13, 2016 in Marietta, Georgia.

9. Waffle House moved to compel arbitration on April 1, 2016. [DE 81.]

10. On or about April 11, 2016, Mr. Gettings stated that Waffle House would not produce a witness to testify at deposition on the noticed date because of its motion to compel arbitration.

11. I propounded discovery to Defendant The Source for Public Data, L.P. ("Public Data") on or about February 5, 2016.

12. Public Data responded on or about March 30, 2016. Its responses show that the number of consumer reports that Waffle House obtained from Public Data declined to zero in the months immediately after I sent my March 5, 2015 letter.

13. Attached hereto as Exhibit B is a true and correct copy of Defendant's Memorandum in Support of Motion to Stay Proceedings and Compel Arbitration filed in *Spears, et al. v. Mid-America Waffles, Inc.*, United States District Court for the District of Kansas, Case No. 11-CV-2273-CM/JPO, Sept. 8, 2011, p. 2.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 15, 2016.

    /s/ Anthony J. Orshansky_____
Anthony J. Orshansky

/s/ Justin Kachadoorian_____
Justin Kachadoorian

# Exhibit A



Anthony J. Orshansky  
anthony@counselonegroup.com

310.277.9945 Tel  
424.277.3727 Fax

**PRIVILEGED AND CONFIDENTIAL SETTLEMENT COMMUNICATION—CALIFORNIA EVIDENCE CODE §§ 1115 ET SEQ., 1152, AND 1154 AND FEDERAL RULE OF EVIDENCE 408**

March 5, 2015

***VIA U.S. MAIL ONLY***

Attn.: General Counsel  
Waffle House, Inc.  
5986 Financial Drive  
Norcross, Georgia 30071

Waffle House, Inc.  
c/o Gregory J. Newman, Registered Agent  
5986 Financial Drive  
Norcross, Georgia 30071

    *Re:   William Jones, et al. v. Waffle House, Inc.*

Dear General Counsel:

    This law firm represents William Gerard Jones, a recent applicant of a Waffle House located in Ormond Beach, Florida. Please direct all correspondence regarding this matter to my office. This letter is not an exhaustive recitation of my client's contentions.

    Mr. Jones applied to work at Waffle House in or around December 2014. As part of the hiring process, Waffle House conducted a background check. However, Waffle House failed to give Mr. Jones a clear and conspicuous disclosure in writing of its intent to procure a consumer report pursuant to the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681(b)(2)(A). Nor did Waffle House provide Mr. Jones a copy of his consumer report, a description of his rights under the FCRA, and the FCRA Summary of Rights promulgated by the FTC and Bureau of Financial Protection, as required under 15 U.S.C. § 1681b(b)(3)(A). Instead, Waffle House simply denied his application for employment. In so doing, Waffle House failed to comply with the notice requirements set forth in 15 U.S.C. § 1681m(a), including the name, address, and telephone number of the consumer reporting agency; Mr. Jones's right to obtain a free copy of his consumer report; and his right to dispute the accuracy or completeness of any information in the consumer report.

    Mr. Jones has reason to be believe that his consumer report contains inaccuracies that could have been remedied had Waffle House provided him with statutorily required notices. Moreover, Waffle House has an obligation to conduct an individualized assessment of an applicant's suitability for employment, but it does not appear that Waffle House performed this assessment for Mr. Jones. *See Green v. Missouri Pacific Railroad*, 549 F.2d 1158, 1160 (8th Cir. 1977) (requiring employers to

*March 5, 2015*
*Page 2 of 2*

conduct individualized assessments into applicants' criminal background). As a result of Waffle House's unlawful conduct, Mr. Jones has suffered damages, including lost wages and emotional distress. The FCRA gives Mr. Jones a cause of action to recover these damages. *See* 15 U.S.C. §§ 1681n, 1681o.

My firm's investigation reveals that Waffle House's noncompliance with the FCRA is systematic and that numerous other applicants and employees did not receive proper notices and disclosures under the statute. Consequently, my client will seek to certify a nationwide class under the FCRA. The FCRA provides for *mandatory* statutory damages from $100 to $1,000 under 15 U.S.C. § 1681n for each violation, plus attorneys' fees and costs. My client will also seek injunctive and declaratory relief as appropriate against Waffle House, among other remedies.

The Federal Trade Commission (FTC) has recently directed its focus to employers who have flouted their obligations under the FCRA.[1] A number of large employers such as Swift Transportation, Dollar General, ClosetMaid, Publix, and Domino's Pizza have recently been sued for failing to comply with their obligations under the FCRA requirements. Employers have fared poorly in these cases. *See, e.g.*, *Reardon v. ClosetMaid Corporation*, No. 2:08-CV-01730, 2013 U.S. Dist. LEXIS 169821 (W.D. Pa. Dec. 2, 2013) (granting partial summary judgment to plaintiff where FCRA disclosure was inadequate); *Singleton v. Domino's Pizza*, No. 11-1823, 2-12 W.L. 245965, *9 (D. Md. Jan. 25, 2012) (denying employer's motion to dismiss plaintiff's section 1681b(b)(2)(a) claim for inadequate disclosures). Not surprisingly, many employers, recognizing their exposure, have opted to settle on a classwide basis.[2]

Before filing his lawsuit, Mr. Jones is amenable to exploring an early resolution of his claims on a classwide basis through private mediation. Resolving this case before a lawsuit is filed would save Waffle House money in terms of the costs of defense and spare it from potential negative publicity. A classwide settlement would also help Waffle House obtain closure and forestall other potential lawsuits that might be filed in the wake of Mr. Jones's action. My firm has been appointed class counsel in numerous class actions in both state and federal courts and has successfully resolved class cases pre-filing.

Please let me know no later than **March 16, 2015**, whether Waffle House is agreeable to exploring an early resolution. If I do not hear from you by that date, I will file my client's lawsuit in federal district court.

        Sincerely,
        CounselOne, PC

        Anthony J. Orshansky

---

[1] *See, e.g.*, http://www.business.ftc.gov/documents/bus08-using-consumer-reports-what-employers-need-know (last accessed February 24, 2015).
[2] *See, e.g.*, Publix class settlement website available at https://secure.dahladmin.com/KNIGHT/Index (last accessed February 24, 2015); Motion for Settlement, *Ellis v. Swift Transportation Co. of Arizona, LLC*, No. 3:13-CV-00473-JAG, Dkt. No. 47 (E.D. Va. Sept. 22, 2014).

# Exhibit B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JARED SPEARS and LEE ELROD,** Individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case No. 11-CV-2273-CM/JPO<br>) |
| **MID-AMERICA WAFFLES, INC. d/b/a WAFFLE HOUSE, et al.,** | )<br>)<br>) |
| Defendants. | ) |

### DEFENDANTS OZARK WAFFLES, LLC, WH CAPITAL, LLC AND WAFFLE HOUSE, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION

**Introduction and Issue before the Court**

Plaintiffs Jared Spears and Lee Elrod filed the instant lawsuit pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, against multiple defendants, including Defendants Ozark Waffles, LLC ("Ozark Waffles"), WH Capital, LLC ("WH Capital") (appearing specially and without waiver of any jurisdictional defenses)[1] and Waffle House, Inc. ("Waffle House"). Plaintiffs Jared Spears and Lee Elrod, neither of whom ever worked for Ozark Waffles, WH Capital, or Waffle House, allege that, while employed as servers at Mid-America Waffles, Inc., they were compensated in a manner that allegedly violates the FLSA. Doc. 5 at ¶ 14. Plaintiffs have styled their claim as a putative opt-in collective action pursuant to 29 U.S.C. § 216(b). Doc. 5 at ¶¶ 21-22. On August 16, 2011, Evelyn Brown ("Brown") and Michelle Robinson ("Robinson"), former employees of Waffle House, filed consents to join the lawsuit. *See* Docs. 35, 36.

---

[1] WH Capital, LLC contends it is not a proper party to this action because this Court lacks personal jurisdiction over WH Capital, LLC.

At the time Opt-ins Robinson and Brown commenced their employment with Waffle House, they entered into binding Arbitration Agreements with Waffle House wherein the parties agreed to resolve all disputes between them through binding arbitration. The parties' mutual promises to arbitrate claims such as the ones raised in this lawsuit are valid and enforceable. Consequently, this Court must stay all proceedings related to Robinson's and Brown's claims and compel arbitration in accordance with their Agreements.

## Factual Background

Evelyn Brown commenced her employment with Waffle House in May 2006. On May 16, 2006, Brown signed an Arbitration Agreement (hereinafter "Brown Agreement"), attached hereto as Exhibit A. The Brown Agreement was signed by Waffle House through its Vice President. It states:

> Waffle House and I hereby agree . . . that Waffle House and I will resolve by arbitration all claims and controversies ("claims"), past, present, or future, whether or not arising out of my employment or termination from employment, that I may have against Waffle House . . . or that Waffle House may have against me. The claims that are arbitrable . . . include, but are not limited to **claims for wages or other compensation due**".

Ex. A at 1 (emphasis added).

Michelle Robinson commenced her employment with Waffle House in May 2011. Robinson signed an Arbitration Agreement (hereinafter "Robinson Agreement") on May 9, 2011. *See* Robinson Agreement, attached hereto as Exhibit B. The Robinson Agreement was also signed by Waffle House through its Vice President. Similar to the Brown Agreement, the Robinson Agreement states:

> Waffle House and I hereby agree . . . that Waffle House and I will resolve by arbitration all claims and controversies ("claims"), past, present, or future, whether or not arising out of my employment or termination from employment, that I may have against Waffle House . . . or that Waffle House may have against me. The claims that are arbitrable . . . include, but are not limited to **claims for**

**wages or other compensation due under the Fair Labor Standards Act**".

Ex. B at 1 (emphasis added).

Both Agreements also state: "Except as otherwise provided in this Agreement, both Waffle House and [Brown/Robinson] agree that neither of us shall initiate or prosecute any lawsuit . . . in any way related to any claim covered by this Agreement." Ex. A and B at 1.

The Brown and Robinson Agreements mutually bind these Opt-ins and Waffle House to arbitrate all disputes. To ensure that both parties clearly understood they were waiving any rights to file lawsuits involving claims covered by the Arbitration Agreement, both the Brown and Robinson Agreements state the following, in bold, capital letters: "**I UNDERSTAND THAT BY SIGNING THIS AGREEMENT, I AM GIVING UP MY RIGHT TO A JURY TRIAL.**" Ex. A and B at 4. Both Brown and Robinson initialed their Agreements just below this statement and signed their names to the Agreement. *Id.*

The FLSA violations alleged by Brown and Robinson in this lawsuit are clearly covered by the language of their Arbitration Agreements. Both Agreements define Waffle House as "Waffle House, Inc. and all of its subsidiaries and affiliates." Ex. A and B at 1. Thus, Defendants Ozark Waffles and WH Capital, as wholly owned subsidiaries and affiliates of Waffle House, are also parties to the Arbitration Agreement. Because the Brown and Robinson Agreements are valid and enforceable, this Court must stay these proceedings as to Brown and Robinson and order arbitration of their claims.

### Argument and Authorities

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, a written arbitration provision in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

3

Case 2:11-cv-02273-CM-JPO   Document 49   Filed 09/08/11   Page 4 of 8
Case 6:15-cv-01637-RBD-G_K   Document 83-1   Filed 04/15/16   Page 11 of 15 PageID
609

contract." *Id.* at § 2. The purpose of the Act is "to place an arbitration agreement upon the same footing as other contracts and to overturn the judiciary's longstanding refusal to enforce agreements to arbitrate." *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 771 (10th Cir. 2010) (internal quotations omitted). Because the FAA is a "congressional declaration of a liberal federal policy favoring arbitration agreements, the Act 'obliges courts to stay litigation on matters that the parties have agreed to arbitrate.'" *Id.* (citing 9 U.S.C. § 3).

Where a contract contains an arbitration provision, there exists a presumption of arbitrability. *Gratzer v. Yellow Corp.*, 316 F.Supp.2d 1099, 1103 (D. Kan. 2004) (Murgia, J.). A defendant seeking to enforce an arbitration agreement must first show the existence of a valid agreement. *Kenney v. Hallmark Cards, Inc.*, No. 08-CV-2134-CM, 2009 WL 102682, *2 (D. Kan. Jan. 7, 2009). Once a defendant has met this initial burden, the plaintiff must demonstrate that a genuine issue of fact remains regarding the validity of the agreement. *Id.*

Generally, state law principles govern whether a given arbitration agreement is valid and enforceable. *Id.* (citing *Kerr v. Dillard Store Servs., Inc.*, No. 97-2604-KHV, 2008 WL 2152046, *3 (D. Kan. May 21, 2008)). In this case, the Brown and Robinson Agreements contain choice of law provisions requiring the application of Mississippi law to the Brown Agreement and Georgia law to the Robinson Agreement.

**A.    A Valid Arbitration Agreement Exists Between Waffle House and Opt-in Brown**

The Brown Agreement is the standard arbitration agreement that Waffle House offered to its employees prior to December 2007. *See generally* Ex. A and B. The Brown Agreement, signed by the parties in May of 2006, states that it "shall be governed by and shall be interpreted in accordance with the laws of the state of the office or restaurant in which [Brown] [is] or was last employed by Waffle House." Ex. A at 3. Because Brown was employed at a Waffle House

4

restaurant located in Jackson, Mississippi, this Court must apply Mississippi law to determine whether the Brown Agreement is valid and enforceable.

To assess the validity of an arbitration agreement under Mississippi law, the Court must "analyze the 'four corners' of the contract and 'the language the parties used in expressing their agreement. When [the] instrument is determined to be clear and unambiguous, the parties' intent must be effectuated.'" *Credit Acceptance Corp. v. Fortenberry*, No. 2:10cv251KS-MTP, 2011 WL 284502, *4 (S.D. Miss. Jan. 26, 2011) (quoting *Gatlin v. Sanderson Farms, Inc.*, 953 So.2d 220, 222 (Miss. 2007)).

In the case at hand, the four corners of the Brown Agreement clearly express the parties' intent to waive their right to a trial by jury and submit any disputes between them to binding arbitration. The promise to submit to binding arbitration is clear and unambiguous. *See* Ex. A at 1 ("The Waffle House and I will resolve by arbitration all claims and controversies ('claims'), past, present, or future".). Furthermore, it is clear that the parties had a meeting of the minds and mutually assented to the terms of the agreement. *See Blake v. Murphy Oil USA, Inc.*, No. 1:10-CV-128-SA-JAD, 2010 WL 3717245, * (N.D. Miss. Sept. 14, 2010) (applying Mississippi law) ("Whether there was a meeting of the minds is determined by considering whether the parties mutually agreed to the terms offered and accepted." (internal quotations omitted)). Finally, the Brown Agreement is supported by valid consideration as both Brown and Waffle House mutually agreed to submit all disputes to binding arbitration. *See id.* at *4 (finding enforceable an employment-related arbitration agreement that "imposes mutual obligations on both parties."). Based on Mississippi law, the Brown Agreement is valid and enforceable.

**B.     A Valid Arbitration Agreement Exists Between Waffle House and Opt-in Robinson**

The Robinson Agreement is the standard agreement that Waffle House has offered its employees since December 2007. *See* generally Ex. B. The Robinson Agreement states that the

5

law of the state of Georgia shall govern interpretation and enforceability of the Agreement. *See* Ex. B at 4 ("[T]his Agreement shall be governed by and interpreted in accordance with the laws of the state of Georgia.").

Under Georgia law, a valid and enforceable arbitration agreement must include three elements: offer, acceptance, and consideration. *See McBride v. Gamestop, Inc.*, No. 1:10-CV-2376-RWS, 2011 WL 578821, *2 (N.D. Ga. Feb. 8, 2011) (applying Georgia law). In the case of the Robinson Agreement, each element clearly exists. Waffle House offered the Agreement to Robinson on her first day of employment, and, by signing the Agreement, Robinson accepted the offer. *See id.* at 4 ("[T]he Plaintiffs' signatures on the Acknowledgment Form demonstrate that they were, at a minimum, aware of the Arbitration Agreement, and they are bound by what they sign." (citing *Charles S. Martin Distrib. Co. v. Bernhardt Furniture Co.,* 445 S.E.2d 297, 299 (Ga. Ct. App. 1994))). Additionally, the Robinson Agreement is supported by adequate consideration. As the Eleventh Circuit has noted, "[t]o satisfy the consideration requirement under Georgia law, an accepting party to a contract can either tender bargained-for performance or make a mutual promise." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). In the case at hand, the parties to the Robinson Agreement made mutual promises to submit all disputes to binding arbitration. *See* Ex. B at 1. For these reasons, the Robinson Agreement is a valid and enforceable contract under Georgia law.

**C.     The Claims Made by Brown and Robinson Fall Within the Scope of Their Arbitration Agreements**

Opt-ins Brown and Robinson allege violations of the FLSA, claims clearly covered by their Arbitration Agreements. In the Brown Agreement, the parties agreed to arbitrate all claims between them, including claims "for wages or other compensation due". Ex. A at 1. Likewise, the Robinson Agreement states that the parties will arbitrate all claims between them, including

6

"claims for wages or other compensation due under the Fair Labor Standards Act". Ex. B at 1. Without question, the FLSA claims brought by Brown and Robinson fall within the purview of their Arbitration Agreements.

## Conclusion

Defendants Ozark Waffles, WH Capital, and Waffle House seek to enforce the contracts Opt-ins Brown and Robinson signed at the commencement of their employment with Waffle House. The claims they have alleged in this lawsuit fall squarely within the scope of their Arbitration Agreements. For the foregoing reasons, the Court should stay these proceedings and compel arbitration of the claims brought by Opt-ins Brown and Robinson.

Respectfully submitted,

*s/ Sarah T. Lepak*
Sarah T. Lepak KS No. 22040
OGLETREE, DEAKINS NASH,
 SMOAK & STEWART, P.C.
4717 Grand Avenue, Suite 300
Kansas City, MO  64112
(816) 471-1301 *(Telephone)*
(816) 471-1303 (*Facsimile*)
sarah.lepak@ogletreedeakins.com

**ATTORNEY FOR DEFENDANTS
WAFFLE HOUSE, INC., OZARK WAFFLES,
LLC, AND WH CAPITAL, LLC**

7

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on the 8th day of September 2011, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Patrick G. Reavey
Kevin Koc
Livestock Exchange Building
1600 Genessee, Suite 303
Kansas City, MO  64102

**ATTORNEYS FOR PLAINTIFFS**

David C. Vogel
Brian N. Woolley
Shelley I. Ericsson
LATHROP & GAGE, LLP
2345 Grand Boulevard, Suite 2200
Kansas City, MO  64108-2618

**ATTORNEYS FOR DEFENDANTS
MID-AMERICA WAFFLES, INC. D/B/A
WAFFLE HOUSE, DAVID HUFF,
MICHAEL CALEY AND PEGGY CALEY**

*s/ Sarah T. Lepak*
**ATTORNEY FOR DEFENDANTS
WAFFLE HOUSE, INC., OZARK WAFFLES, LLC,
AND WH CAPITAL, LLC**

10891139.3 (OGLETREE)