**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

WILLIAM JONES,

                Plaintiff,

v.                                            Case No. 6:15-cv-1637-Orl-37DAB

WAFFLE HOUSE, INC.; WH CAPITAL,
LLC; THE SOURCE FOR PUBLIC
DATA, L.P.; SHADOWSOFT, INC;
HARLINGTON-STRAKER-STUDIO,
INC.; and DALE BRUCE
STRINGFELLOW,

                Defendants.

_____

**ORDER**

    This cause is before the Court on the following:

1.    Motion of the Source for Public Data, L.P., Shadowsoft, Inc., Harlington-Straker-Studio, Inc., and Dale Bruce Stringfellow, to Dismiss for Lack of Standing  (Doc. 37), filed December 2, 2015;

2.    Plaintiff's Opposition to the Motion of the Source for Public Data, L.P., Shadowsoft, Inc., Harlington-Straker-Studio, Inc., and Dale Bruce Stringfellow, to Dismiss for Lack of Standing (Doc. 49), filed December 16, 2015;

3.    Defendants Waffle House, Inc. and WH Capital, LLC's Motion to Dismiss (Doc. 41), filed December 4, 2015;

4.    Defendants Waffle House, Inc. and WH Capital, LLC's Memorandum in

Support of Motion to Dismiss (Doc. 42), filed December 4, 2015;[1]

5.      Plaintiff's Opposition to the Motion of Waffle House, Inc. and WH Capital, LLC to Dismiss (Doc. 56), filed December 18, 2015;

6.      Defendants The Source for Public Data, L.P., Shadow Soft, Inc., Harlington-Straker-Studio, Inc., and Dale Bruce Stringfellow's Motion for Leave to File a Reply Memorandum in Support of Motion to Dismiss for Lack of Standing (Doc. 105), filed June 3, 2016;

7.      Plaintiff's Opposition to Public Data's Motion for Leave to File a Reply Brief in Support of its Motion to Dismiss for Lack of Standing (Doc. 106), filed June 4, 2016;

8.      Defendants Waffle House, Inc. and WH Capital, LLC's Motion to Dismiss, or in the Alternative to Stay Proceeding, and to Compel Arbitration and Incorporated Memorandum of Law (Doc. 81-1), filed April 1, 2016;[2] and

9.      Plaintiff's Opposition to the Motion of Waffle House, Inc. and WH Capital, LLC to Dismiss or in the Alternative to Stay Proceedings and Compel Arbitration (Doc. 83), filed April 15, 2016.

---

[1] Waffle House, Inc. and WH Capital, LLC (collectively, "**Waffle House**") filed their motion to dismiss and a supporting memorandum of law in two separate documents. This practice is a clear violation of Local Rule 3.01(a), which provides that a movant shall include "a concise statement of the precise relief requested, a statement of the basis for the request, and a memorandum of legal authority in support of the request" in a *single* document not to exceed twenty-five pages. The Court advises the movants that it will summarily strike any future filings that are noncompliant with the Court's Local Rules—including Local Rule 3.01(a).

[2] Waffle House's motion to compel arbitration (Doc. 81) and separate memorandum of law (Doc. 81-1) also violates Local Rule 3.01(a). The filing at Doc. 81 is unnecessary. Waffle House should have filed the document at Doc. 81-1 as the primary motion.

**BACKGROUND**

## I.    Complaint

On October 1, 2015, Plaintiff filed a putative class action complaint against Defendants based on their practices in compiling and issuing background reports for job applicants, which Plaintiff alleges are non-compliant with the Fair Credit Reporting Act ("**FCRA**"). (*See* Doc. 1 ("**Complaint**").) Plaintiff's allegations stem from his application for employment at a Waffle House restaurant in Ormond Beach, Florida, on or about December 6, 2014. (*Id.* at ¶ 21; Doc. 37-2, ¶ 7.) According to the Complaint, as part of its hiring process, Waffle House procured a background report ("**Report**") on Plaintiff through Defendant The Source for Public Data, L.P. ("**Public Data**")—a paid search website for public record information. (*See* Doc. 1, ¶¶ 21, 41; *see also* Doc. 37-1, ¶ 5.)[3] Plaintiff alleges that Waffle House refused to hire him based on the content of the Report. (Doc. 1, ¶ 47.) He also believes that the Report contained information about his "purported criminal convictions." (*Id.* ¶ 45.)

Under the FCRA, when preparing a consumer report, a consumer reporting agency ("**CRA**") is required to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report

---

[3] The Source for Public Data, L.P., Shadowsoft, Inc., Harlington-Straker-Studio, Inc., and Dale Bruce Stringfellow filed a motion to dismiss on December 2, 2015. (Doc. 37 ("**Public Data MTD**").) On December 4, 2015, Waffle House also moved for dismissal. (Doc. 41 ("**Waffle House MTD**").) Attached to each MTD are identical declarations of Dale Bruce Stringfellow and Waffle House employee Andrea Davidson (*See* Docs. 37-1, 37-2, 42-1, 42-2.) Similarly, Plaintiff attached identical declarations in support of his responses to each MTD. (*See* Docs. 49-1, 49-2, 56-1, 56-2.) Throughout this Order, the Court will refer only to the declarations attached to the Public Data MTD and the response thereto. Going forward, the parties are reminded that the Court's Case Management and Scheduling Order prohibits the filing of duplicative documents that are already part of the record. (Doc. 72, p. 7.)

relates." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991). Furthermore,

> when a CRA furnishes a consumer report for employment purposes that contains matters of public record which are likely to have an adverse effect on a consumer's ability to obtain employment[,] . . . the CRA must either notify the consumer about the report or utilize strict procedures designed to insure that the information in the report is complete and up to date.

*Farmer v. The Philips Agency, Inc.*, 285 F.R.D. 688, 695 (N.D. Ga. 2012). The FCRA also requires that any person, who takes adverse action against a consumer that is "based in whole or in part on any information contained in a consumer report[,] must notify the affected consumer." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007). "The notice must point out the adverse action, explain how to reach the agency that reported on the consumer's credit, and tell the consumer that he can get a free copy of the report and dispute its accuracy with the agency." *Id.* at 53.

The FCRA creates a private right of action against CRAs for negligent and willful violations of these statutory duties. *Cahlin*, 936 F.2d at 1156. The Act also provides a private right of action against "businesses that use consumer reports but fail to comply." *Burr*, 551 U.S. at 53. In the instant action, Plaintiff claims that Public Data "maintains absolutely no policies and procedures to ensure that reports comply with the standards set forth in the FCRA." (*Id.* ¶ 34.)[4] Additionally, Plaintiff alleges that Waffle House willfully violated the FCRA by failing to provide him with a copy of the Report either

---

[4] Plaintiff alleges that Shadowsoft, Inc., Harlington-Straker-Studio, Inc., and Dale Bruce Stringfellow are "alter egos" of Public Data and he intends to "pierce the corporate veil and hold each entity liable for the misconduct of [Public Data]." (Doc. 1, ¶ 36.) Thus, following the parties' practice, the Court will collectively refer to these defendants as Public Data.

before or after taking adverse action against him and that such violations are "systematic and uniform and affected all job applicants and employees in the same way." (Doc. 1, ¶¶ 21–26.)

## II.    Motion to Dismiss for Lack of Standing

In response, Public Data and Waffle House (collectively, "**Defendants**") each moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). (Docs. 37, 41.) Specifically, Defendants contend that Plaintiff lacks standing to bring a claim under the FCRA because there is no evidence that Waffle House ran a search query on Plaintiff using Public Data's database and, therefore, Plaintiff cannot prove the existence of an injury-in-fact, causation, or redressability. (Doc. 37, p. 1–2; *see also* Docs. 41, 42.) Plaintiff timely responded to each MTD. (Docs. 49, 56.)

## III.    Motion to Compel Arbitration

Since the initiation of this suit, the facts have continued to evolve. According to Waffle House, in February 2016, Plaintiff applied, and was hired, for a position with a Waffle House restaurant in Kansas City, Missouri.[5] (Doc. 81-1, pp. 2, 3, 4.) As a condition of employment, Plaintiff signed an arbitration agreement ("**Arbitration Agreement**") on February 4, 2016, pursuant to which he agreed to arbitrate:

> all claims and controversies . . . past, present, or future, arising out of any aspect of or pertaining in any way to [his] employment, and specifically including, but not limited to, termination from employment, that [he] may have against Waffle House or against its officers, directors, employees or agents in their capacity as such or otherwise, or that Waffle House may have against [him].

(Doc. 81-2, p. 15.)

Importantly, the Arbitration Agreement contains a delegation provision, which

_____

[5] Plaintiff no longer works at this Waffle House location. (Doc. 81-1, p. 3.)

commits to the arbitrator "any dispute relating to the interpretation, applicability, enforceability or formation of [the] Agreement, including but not limited to any claim that all or any part of [the] Agreement is void or voidable" ("**Delegation Provision**"). (Doc. 81-2, p. 15.) Consequently, Waffle House has moved to compel arbitration of Plaintiff's claims in this suit ("**Motion to Compel**"). (Doc. 81-1.) Plaintiff timely responded. (Doc. 83.)

The parties' respective MTDs and the Motion to Compel are ripe for the Court's determination.

## STANDARDS

### I.    Standing

"Standing to bring and maintain a lawsuit is fundamental to invoking a federal court's subject matter jurisdiction." *Sierra Club, Inc. v. St. Johns River Water Mgmt. Dist.*, No. 6:14-cv-1877-Orl-40DAB, 2015 WL 6814566, at *4 (M.D. Fla. Nov. 6, 2015) (citing *DaimlerChrsyler Corp. v. Cuno*, 547 U.S. 332, 340–42 (2006)). For a plaintiff to have standing, he must demonstrate: (1) a concrete, actual injury-in-fact; (2) a causal connection between the injury and the defendant's conduct; and (3) a likelihood that the injury can be redressed. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The amount of proof required to establish standing varies with the progression of the litigation. *See id.* at 561 ("Since [the standing elements] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.").

## II.     Rule 12(b)(1)

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms: facial attacks and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). "'Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1529. "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* "Challenges to a party's standing is a factual attack on the district court's subject matter jurisdiction that requires the court to look beyond the four corners of the complaint." *Sierra Club*, 2015 WL 6814566, at *4 (citing *Garcia v. Copenhaver, Bell & Assocs., M.D.'S, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997)).

### A.     Implication of the Merits

"On a factual attack of subject matter jurisdiction, a court's power to make findings of fact and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of plaintiff's cause of action." *Garcia*, 104 F.3d at 1261. When the merits are not implicated, "no presumptive truthfulness attaches to the allegations of the plaintiff's case, and the existence of disputed facts

material to subject matter jurisdiction does not preclude the Court from evaluating the merits of the jurisdictional claim for itself." *Simmons v. United States*, No. 300CV1316J99MMH, 2005 WL 1243760, at *5 (M.D. Fla. May 25, 2005). Conversely, "[w]here the defendant's attack on subject matter jurisdiction does implicate an element of the plaintiff's underlying claim, the Court is not permitted to weigh facts for itself and must resolve disputed factual issues in favor of the plaintiff, as non-movant." *Id.*, n.13 (citing *Garcia*, 104 F.3d at 1261). In the latter situation, "[t]he proper course of action for the district court is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Lawrence*, 919 F.2d at 1529.

Thus, as a general rule, "federal claims should not be dismissed on a motion for lack of subject matter jurisdiction when that determination is intermeshed with the merits of the claim and when there is a dispute as to a material fact." *Lawrence*, 919 F.2d at 1531. "The exceptions to this rule are narrowly drawn[] and are intended to allow jurisdictional dismissals only in those cases where the federal claim is clearly immaterial or insubstantial." *Williamson v. Tucker*, 645 F.2d 404, 416 (5th Cir. 1981)[6]; *accord Garcia*, 104 F.3d at 1261; *Lawrence*, 919 F.2d at 1529. For this reason, "it is extremely difficult to dismiss a claim for lack of subject matter jurisdiction." *Garcia*, 104 F.3d at 1260.

## III.   Rule 56

---

[6] Decisions of the Fifth Circuit rendered on or before September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981). The *Williamson* opinion was rendered on May 20, 1981; therefore, it is binding precedent in this Circuit.

"When the jurisdictional basis of a claim is intertwined with the merits, the district court should apply a Rule 56 summary judgment standard when ruling on a motion to dismiss which asserts a factual attack on subject matter jurisdiction." *Lawrence*, 919 F.2d at 1530. Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant carries its burden by demonstrating that there is an absence of evidence supporting the non-movant's case. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict" for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Which facts are material depends on the underlying substantive law. *Id.* The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *See Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 759 (11th Cir. 2006). However, the Court should not deny summary judgment "when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

## IV.   Arbitration

Under the FAA, "courts must rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013).

Upon the motion of any party to a valid arbitration agreement, courts must stay litigation of all claims that fall within the agreement's scope and compel arbitration according to the agreement's terms. *See* 9 U.S.C. §§ 3–4. Arbitration agreements are presumptively valid and enforceable. *See id.* § 2.

However, arbitration under the FAA is ultimately "a matter of consent, not coercion," *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989). Parties opposing arbitration can challenge the formation and validity of a contract containing an arbitration clause. Specifically, the Eleventh Circuit recognizes "three distinct types of challenges to a contract containing an arbitration clause": (1) challenges to the formation, or "the very existence," of the contract; (2) challenges "to the validity of the arbitration clause standing alone"; and (3) challenges "to the validity of the contract as a whole." *Wiand v. Schneiderman*, 778 F.3d 917, 924 (11th Cir. 2015).

Nonetheless, under a delegation provision "parties may agree to commit even threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015). "When an arbitration agreement contains a delegation provision and the plaintiff raises a challenge to the contract as a whole, the federal courts may not review his claim because it has been committed to the power of the arbitrator." *Id.* "[A]bsent a challenge to the delegation provision itself, the federal courts must treat the delegation provision as valid . . . and must enforce it . . . , leaving any challenge to the validity of the [a]greement as a whole for the arbitrator." *Id.* at 1146–47.

**DISCUSSION**

I.    **MTDs**

Plaintiff has sued Defendants under multiple provisions of the FCRA. (*See* Doc. 1.) As Waffle House points out, "[t]hese provisions all have at least one thread in common—they are never triggered unless a 'consumer report' is at issue." (Doc. 42, p. 8.) Thus, Defendants assert that, absent evidence that Waffle House procured a consumer report through Public Data, Plaintiff has not sustained an injury-in-fact necessary to bring suit under the FCRA.[7] (*See* Doc. 37, p. 3; Doc. 42, p. 2.) Indeed, Defendants contend that the Report—which forms the basis for Plaintiff's claims—does not exist. (Doc. 37, p. 7; *see also* Doc. 42, p. 2.)

In this action, as it was in *Williamson*, "it is clear that the jurisdictional issue reaches the merits of the plaintiff's case." 645 F.2d at 416. Jurisdiction becomes "inextricably intertwined with the merits of the lawsuit" where "a decision on one would effectively decide the other." *Lawrence*, 919 F.2d at 1529. Here, whether a consumer report was issued is dispositive of both Plaintiff's substantive claims and the jurisdictional issue of standing. Thus, to be properly dismissed for lack of subject matter jurisdiction, this action "must fall within the exception to the [U.S. Supreme Court's] general prohibition of jurisdictional dismissals that implicate the merits of the plaintiffs' case." *Williamson*, 645 F.2d at 416 (discussing *Bell v. Hood*, 327 U.S. 678 (1945)). "That is, the plaintiffs' claim must 'clearly appear to be immaterial and made solely for the purpose of obtaining jurisdiction,' or must be 'wholly insubstantial or frivolous.'" *Id.*

---

[7] Public Data has reserved—until "the appropriate time"—its arguments as to whether it is a CRA that issues consumer reports within the definition of the FCRA. (Doc. 37, p. 6.)

Based on the current record, the Court does not find that Plaintiff's claims are patently insubstantial or frivolous. Thus, the Court will apply the summary judgment standard in assessing whether Plaintiff's claims are foreclosed by the absence of evidence as to the existence of the Report. *Lawrence*, 919 F.2d at 1530.

In support of their MTDs, Defendants each submitted declarations from Waffle House employee Andrea Davidson ("**Davidson**") and Defendant Dale Bruce Stringfellow ("**Stringfellow**"). (*See* Docs. 37-2, 37-1.) Davidson served as Security Administrator for Waffle House's Security Department from September 2009 to April 2015. (Doc. 37-2, ¶ 4.) As Security Administrator, Davidson's responsibilities included assisting in processing background investigations for job applicants at Waffle House—specifically, applicants for hourly employment. (*Id.* ¶ 5.) According to Davidson, Waffle House exclusively conducts public record searches on its applicants through Public Data, with the exception of its North Carolina applicants.[8] (*Id.* ¶ 6.) On December 8, 2014, Davidson updated Waffle House's computer system to reflect that Plaintiff passed his background check ("**Report Status**"). (*Id.* ¶ 9; *see also id.* at 7 (indicating a "BC Passed" status on Plaintiff's Hourly Background Associate Call Data Entry sheet). Nonetheless, Davidson contends that: (1) "Waffle House does not have any specific record of ever actually running a public record search" on Plaintiff; (2) "[b]ecause [Plaintiff] applied to Waffle House during the busy holiday season, and because Waffle House receives a high volume of applicants during that time, it is possible that no such public record search was ever conducted"; and (3) she does not "have any specific recollection of performing a public record search on [Plaintiff]."

---

[8] As Plaintiff applied for a position in Ormond Beach, Florida, his application does not fall within this exception. (*See* Doc. 37-2, ¶ 7.)

(Doc. 37-2, ¶¶ 11, 13, 15.)

Stringfellow is the president of Defendant Harlington-Straker Studio, Inc., the general partner of Public Data. (Doc. 37-1, ¶ 1.) Stringfellow is also the president of Shadowsoft, Inc., a corporation that collects and maintains a database of public governmental records and leases such information to Public Data. (*Id.* ¶¶ 3, 4.) According to Stringfellow, Public Data regularly keeps records of all searches that have been conducted by its customers. (*Id.* ¶ 8.) Such searches are conducted through password-protected accounts linked to specific user identification codes ("**ID Codes**"). (*Id.* ¶ 7.)  As such, Stringfellow first identified all searches under the Waffle House ID Code that: (1) included a combination of the terms "William," "Gerard" and "Jones"— Plaintiff's first, middle, and last name; and (2) were conducted between December 1 and December 15, 2014. (*Id.* ¶ 9.) Stringfellow then reviewed *all* searches conducted between December 2014 and October 2015 using: (1) the Waffle House ID Code; and (2) the Internet Protocol address associated with Waffle House's prior searches on Public Data. (*See id.* ¶¶ 9–11.)  However, Stringfellow was "unable to locate any searches run by [Waffle House] that could reasonably relate to the events described in the Complaint." (*Id.* ¶ 12.) According to Stringfellow, "Public Data has no record of Waffle House ever having done a search on [Plaintiff]"—or any variation of his name. (*Id.*)

In response, Plaintiff submitted his own declaration, as well as a declaration from attorney Anthony J. Orshansky ("**Orshansky**"). (Docs. 49-1, 49-2.) Plaintiff declares that, after he submitted his application, he had successive interviews with the restaurant manager and a supervisor named Diane. (Doc. 49-1, ¶¶ 3, 4.) Three days after his

interview with Diane, Plaintiff called the restaurant to inquire as to the status of his application. (*Id.* ¶ 5.) At that time, the restaurant manager informed Plaintiff that Waffle House had run a background check and that Diane would contact him regarding the hiring decision. (*Id.*) Ultimately, Plaintiff was not hired. (*Id.* ¶ 6.)

For his part, Orshansky states that he sent a pre-suit letter to Waffle House on Plaintiff's behalf on March 5, 2015, in which he outlined Plaintiff's FCRA claims ("**Initial Letter**"). (Doc. 49-2, ¶ 2.) In response to the Initial Letter, John C. Lynch ("**Mr. Lynch**"), Waffle House's defense counsel, represented that Waffle House had conducted a background check on Plaintiff, and Plaintiff had passed it; however, Mr. Lynch offered no explanation as to why Plaintiff was not hired. (*Id.* ¶ 3; *see also id.* at 4–5 (providing a copy of the correspondence from Mr. Lynch to Orshansky dated March 23, 2015).) In response to a second letter, Mr. Lynch stated that Waffle House had been unable to locate any records on Plaintiff. (*Id.*, ¶ 5; *see also id.* at 13 (providing a copy of the correspondence dated April 22, 2015).)

Based on this evidence, Plaintiff argues that a jury must decide whether Waffle House obtained a consumer report on him through Public Data. (Doc. 49, p. 12.) The Court agrees.[9] Plaintiff has produced evidence demonstrating that the restaurant manager and Mr. Lynch confirmed that Waffle House completed a background check on Plaintiff in connection with his application for employment. This evidence is corroborated by Waffle House's own paper work, as the Report Status indicates that Plaintiff passed

---

[9] Additionally, Plaintiff contends that Davidson's testimony that she did not perform a background check on Jones is not credible. (Doc. 49, p. 10.) This is also a question for the jury. *See Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1160 ("[C]redibility determinations are for the fact finder.").

his background check.[10] Simply put, this is direct evidence that Waffle House ran a background check on Plaintiff.

Viewing the facts in the light most favorable to Plaintiff, a reasonable juror could plausibly conclude that Waffle House performed a background check on Plaintiff using Public Data's systems. The Defendants' attempt to prove that they now have no recollection or record of such a search is insufficient to defeat Plaintiff's evidence on a summary judgment standard where there is a material factual dispute as to whether a background check was performed on Plaintiff. Indeed, where, as here, the question of jurisdiction is intertwined with a question that implicates a substantive element of plaintiff's claim, "the resolution of the question must be made by the fact finder deciding the merits of the claim." *Garcia*, 104 F.3d at 1264; *see also, e.g.*, *id.* at 1263 ("[T]he ultimate conclusion reached by our holding that whether or not one is an 'employer' is an element of an ADEA claim, is the belief that the jury, rather than the judge, should decide the disputed question."). Consequently, the MTDs are due to be denied in their

---

[10] Curiously, Plaintiff argues that because he was ultimately rejected for employment with Waffle House, his status as having passed the background check is of little relevance, as he believes that he *was* rejected based on the contents of the Report, which may have contained inaccurate information. (*See* Doc. 56, p. 4, n.2.) Plaintiff contends that because his name—"William Jones"—is common, his criminal record often contains inaccuracies. (Doc. 49-1, ¶ 9.) To illustrate this, Plaintiff discusses that, around the same time he submitted his application to Waffle House, he also submitted an application to lease an apartment, and the consumer report generated included criminal records for other persons also named "William Jones." (*Id.*) As such, Plaintiff argues that there is a "likelihood that persons responsible for processing the consumer report for Plaintiff entered incorrect personal identifying information, possibly using the first or last name from someone else's job application, when obtaining the consumer report." (Doc. 49, p. 12.) Importantly, Plaintiff asserts that Waffle house has failed to identify any other reason why, as an experienced server, Waffle House would deny him a job during the busy holiday season. (Doc. 49, p. 10, n.2.) Though convoluted and counterintuitive, the Court finds that Plaintiff is entitled to pursue this theory through discovery.

entirety.

Moreover, the Court rejects Public Data's request to file a reply memorandum in support of its MTD (Doc. 105 ("**Reply Motion**")). Public Data's Reply Motion—filed on June 3, 2016—is based on two grounds: (1) a recent Supreme Court decision involving standing under the FCRA, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016); and (2) that, to date, Plaintiff has failed to discover any facts to support his claim that Waffle House procured a Report on Plaintiff through Public Data. (Doc. 105, p. 1.) First, the Court has considered *Spokeo* and finds that it is inapposite to the resolution of the MTDs. In *Spokeo*, the Supreme Court held that by failing to distinguish between the requirements that an injury-in-fact be "concrete" *and* "particularized," the lower court failed to properly apply the standing elements in resolving a <u>facial</u> challenge. 136 S. Ct. at 1544–45, 1550. Here, the Court considers a <u>factual</u> challenge that is inextricably intertwined with the merits of Plaintiff's suit and, thus, requires jury determination.

Secondly, at this stage of the litigation, seven months remain until the close of discovery. (*See* Doc. 72, p. 3.) Therefore, Plaintiff is entitled to full discovery to establish whether a consumer report was produced and whether it caused him to be adversely affected in his quest for employment with Waffle House. *See Williamson*, 645 F.2d at 414 (recognizing that before making "factual determinations decisive of a motion to dismiss for lack of jurisdiction," "the district court must give the plaintiff an opportunity for discovery"). Indeed, as Plaintiff points out, "Defendants are solely in possession of information and documents that would prove Plaintiff's allegations of injury." (Doc. 49, p. 2.) [11]

---

[11] Additionally, Plaintiff argues that "to the extent the Court wishes to resolve

## II.     Motion to Compel

As a final matter, the Motion to Compel has been set for a hearing on July 1, 2016, at 9:30 a.m. (Doc. 110.) The Court's review is necessarily limited to Plaintiff's direct challenges to the Delegation Provision in the Arbitration Agreement. *See Parnell*, 804 F.3d at 1144 (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010).) The Court will, therefore, permit the parties to present oral argument only on Plaintiff's challenges to the Delegation Provision as set forth in his response to the Motion to Compel (Doc. 83, pp. 18–19)—including whether the circumstances surrounding the execution of the Arbitration Agreement were improper, thereby implicating the Court's managerial authority to govern the conduct of counsel and parties in class actions. *See, e.g.*, *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914 (11th Cir. 2014); *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985). In the interim, the Court will suspend the briefing deadline for Defendants' response to Plaintiff's class certification motion (Doc. 108).

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.     Motion of the Source for Public Data, L.P., Shadowsoft, Inc., Harlington-Straker-Studio, Inc., and Dale Bruce Stringfellow, to Dismiss for Lack of Standing (Doc. 37) is **DENIED**.

2.     Defendants Waffle House, Inc. and WH Capital, LLC's Motion to Dismiss

---

[any] factual dispute, [he] respectfully requests an evidentiary hearing to occur after the parties have had the opportunity to conduct discovery." (Doc. 49, p. 15.) Whether a jury question remains at the close of discovery will be a determination best made on a timely motion for summary judgment. As such, Plaintiff's request for an evidentiary hearing is denied.

(Doc. 41) is **DENIED**.

3.      Defendants The Source for Public Data, L.P., Shadowsoft, Inc., Harlington-Straker-Studio, Inc., and Dale Bruce Stringfellow's Motion for Leave to File Reply Memorandum in Support of Motion to Dismiss for Lack of Standing (Doc. 105) is **DENIED**.

4.      Pursuant to Federal Rule of Civil Procedure 12(a)(4), on or before Thursday, **June 30, 2016**, Defendants The Source for Public Data, L.P., Shadowsoft, Inc., Harlington-Straker-Studio, Inc., and Dale Bruce Stringfellow are **DIRECTED** to file a responsive pleading to Plaintiff's Complaint (Doc. 1). In light of the pending Motion to Compel (Doc. 81), Defendants Waffle House, Inc. and WH Capital, LLC are not required to file a responsive pleading at this time.

5.      The deadline for Defendants' Opposition to Class Certification and All Supporting Evidence, previously set for July 1, 2016 (Doc. 72, p. 3), is **SUSPENDED** pending further order of the Court.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on June 13, 2016.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record